[L. A. No. 15440.   In Bank.—March 20, 1936.]

ALFRED T. ROARK, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

E. L. Johnson for Petitioner.

Philbrick McCoy for Respondent.

CONREY, J.—This proceeding was instituted to review an order of the Board of Governors of The State Bar of California, adopting the findings of local administrative committee No. 3 of San Diego County, and recommending to this

court that petitioner be disbarred from further practice of the law in this state.

The notice to show cause and amendment thereto contained seven counts charging petitioner with professional misconduct while acting as attorney for the guardian of the estate of Amanda Lindquist, an incompetent person. The committee found that the evidence was insufficient to prove the charges contained in counts 3, 4 and 6, but found that petitioner was guilty of misconduct in whole or in part as charged in the remaining counts.

Petitioner contends that there was insufficient evidence to support the said findings and recommendation and that he was prejudiced by misconduct of one of the examiners acquiesced in by the committee, as well as by an inadequate consideration of the record on the part of the Board of Governors. Lastly, he pleads that the discipline recommended is too drastic and is unwarranted by the facts and circumstances.

Let it first be said that there is abundant evidence of petitioner's guilt and there is no doubt as to the commission by him of acts of misconduct of most serious import, even if not to the extent originally charged. The evidence establishes clearly the following facts:

In February, 1919, petitioner was appointed as attorney for the guardian of the estate of Amanda Lindquist, an incompetent person, and he acted in that capacity until death of the incompetent, and thereafter until August, 1933. The estate was a small one and by the year 1928 petitioner had succeeded in converting practically all of the assets thereof into cash, some $4,000. Petitioner thereupon petitioned the San Diego County Superior Court in the matter of said estate and secured its approval to a loan of said $4,000, to be secured by note and mortgage on San Diego real property of a represented value of $12,000. Petitioner and his wife were the borrowers, but petitioner did not inform either the court or the guardian of that fact. He merely told the guardian that the $4,000 had been loaned and that the loan was secured by first mortgage on real property of $12,000 value. Petitioner took the $4,000 for his own use and he and his wife signed a note and mortgage purporting to be a lien on a lot owned by them, designated as lot 14, block E, Burlingame, San Diego. But the mortgage was never recorded nor were note and mortgage ever delivered to the guardian. It was not

until 1933, some time after the death of the incompetent, that inquiries by the public administrator brought to light the true status of the affairs of the estate. Shortly after execution of said note and mortgage (which remained unrecorded), and without regard for the purport of said documents, petitioner obtained a $1500 bank loan which he secured by a recorded first lien on said same real property, lot 14. Later this loan was repaid and the recorded lien discharged, but petitioner thereafter borrowed $5,000 and to secure this loan he and his wife executed a trust deed on said property, which trust deed was recorded and became a first lien of record thereon. It is undoubtedly true that petitioner's failure to record the original mortgage executed to the guardian was intentional, enabling him to procure the two later loans on the property, and that these acts were a fraud upon the estate of the incompetent. Subsequent to execution of the $5,000 trust deed, petitioner and his wife parted with all title to the real property, thereby leaving the $4,000 loan unsecured.

The result of the above loan transaction was that petitioner converted to his own use about $3,880 of estate funds. On this amount, over the remaining years of the guardianship, there was credited by way of court allowances for care of the ward, fees, expenses, etc., about $3,000, but a balance of no less than $834.36 was never returned to the estate or to the guardian. Furthermore, between August, 1929, and August, 1933, the court awarded to the guardian fees aggregating $200. These fees were never received by the guardian but, on the contrary, without her knowledge and consent they were converted by petitioner to his own use.

There is evidence tending to prove that petitioner, with intent to deceive the court and the guardian and to defraud the estate, wilfully and fraudulently forged the guardian's name to at least three documents, to wit: (1) To a petition for the sale of personal property and verification thereto, dated and filed in the superior court on August 29, 1919; (2) To third account and verification thereto, dated and filed in the superior court August 19, 1929; and (3) to petition seeking approval of third account and allowance for guardian and her attorney for services rendered in connection with the estate, dated and filed in the superior court August 19, 1929. While the testimony of experts as to the handwriting questions at issue pre-

sents conflicting opinions, the evidence justifies the findings of the committee that the signatures were not genuine.

■ We come now to petitioner's contention that one of the examiners was guilty of prejudicial misconduct in that he went to the home of the guardian on the day she was subpoenaed to appear and intimidated her, and thereafter, when examining her, resorted excessively to leading questions and conducted an improper and prejudicial cross-examination. Assuming, without deciding, that these criticisms are in some degree justified, the evidence of petitioner's misconduct, and his own admissions in relation thereto, leave the proof against him so strong that the findings are completely justified. Even without the forgeries, which are vehemently disputed, petitioner's misapplication of the estate's funds was far too flagrant to be disregarded or excused.

■ The above discussion leaves but one further question for consideration: Should petitioner be disbarred, or should he be subjected merely to some form of discipline?

The license to practice law as an attorney and counselor is a certificate of good moral character. It is a representation by the court, speaking as of the date of the license, that the licensee is a trustworthy person who reasonably may be expected to act fairly and honestly in the practice of his profession. Thereafter, in the absence of proof to the contrary, the original representation exists as a continuing presumption. The relations between courts and counsel are and must be those of confidence, and not of suspicion. But when charges of misconduct have been made and proved in a disbarment proceeding, the original representation has fallen, and with it the presumption becomes dust and ashes. There are, as everyone knows, many lapses from high standards, due to human frailty, which may be overlooked, or visited with mild punishment. The numerous instances of discipline by way of suspension or reprimand have shown the reluctance with which the disbarment penalty is imposed.

But when in a disbarment proceeding it is established by evidence amounting to proof that an attorney and counselor has deliberately been dishonest in dealing with the affairs of his client, and has violated the duty which he owes to "never seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law" (sec. 282, subd. 4, Code Civ. Proc.), and when judgment of the Supreme Court is

invoked upon such facts, then a refusal to order disbarment amounts to a renewal of the original license, and is a declaration that in spite of his own record, the attorney is fit to be offered to the public as one who safely may be trusted. In this case the court has no reasonable alternative. The petitioner has disbarred himself.

It is therefore ordered that petitioner, Alfred T. Roark, be and he is hereby disbarred from the practice of law in this state, and his name is stricken from the roll of attorneys of the state of California.

Waste, C. J., Shenk, J., Thompson, J., Langdon, J., Seawell, J., and Curtis, J., concurred.