**H. S. BECKER v. A. J. MERRELL, as City Manager of the City of Fort Lauderdale, Florida, et al.**

20 So. (2nd) 912
December 19, 1944
Rehearing denied February 28, 1945

June Term, 1944
Division B

*John D. Kennedy,* for appellant.

*T. O. Berryhill,* for appellees.

THOMAS, J.

Appellant sought in mandamus rescision of the city manager's order dismissing him from the office of Chief of Police of Fort Lauderdale and the Civil Service Board's order sustaining the manager's action. Besides reinstatement he also prayed for payment of "back salary." Attached to his petition and by appropriate words made a part of the alternative writ was a transcript of testimony taken with respect to the charges preferred against him.

The circuit judge granted a motion to quash the writ because he concluded there was evidence sufficient to sustain charge number 7 as it was elaborated upon in paragraphs A and B of the bill of particulars to that charge. We shall, therefore, confine our discussion to the misconduct set out in this formal presentation as detailed in these sections of the particulars.

The city manager discharged appellant under Rule 8, Section 1, of the Civil Service Rules for "conduct unbecoming to a police officer . . . at the scene of the accident, which occurred in January 26, 1944, on West Broward Boulevard, Fort Lauderdale, Florida." Substance of the particulars is that the appellant, in uniform, was driving a city-owned car (paragraph A) and was involved in a wreck (paragrapt B) "while under the influence of alcoholic liquors."

The Civil Service Rules introduced by stipulation contained eighteen "causes for removal," among them the one upon which appellant's dismissal was based—"conduct unbecoming an officer." When the Civil Service Commission granted appellant's motion for a bill of particulars the manager introduced the subject of intoxicating liquors by charging appellant with having participated in an accident and having driven a municipally-owned automobile while under the influence of intoxicants and while wearing the uniform of his office.

It sems in this state of record that we must decide first whether a police chief may be said to be guilty of conduct unbecoming an officer if he has an accident while wearing the insignia of his office, at the time driving a city-owned car and being under the influence of intoxicants.

There is no need to confuse the issue by a discussion of intoxication, as such, because this court long ago recognized the difference between the condition of a person intoxicated and one under the influence of intoxicating liquors. Then, too, the appellant was not charged with intoxication, although such a ground for dismissal was incorporated in Rule 8, supra. The important question is: Would involvment in a mishap or operation of a city car by a police chief in uniform and under the influence of liquor constitute, if proved, conduct

unbecoming an officer? Familiar as is the phrase "conduct unbecoming an officer," there seem to be few cases on the subject, and none has been cited where a precise definition was undertaken. It was said by the Supreme Court of New York, appellate division, in People ex rel. Dougan v. Greene, 89 N.Y.S. 1067, that the term is an elastic one "depending upon individual conceptions of what belongs to the office of a policeman." The Supreme Court of Pennsylvania in Souder v. City of Philadelphia, 305 Pa. 1, 156 Atl. 245, held that a police captain was guilty of such conduct when in an investigation of his remarkably large personal fortune "he answered . . . in a way not to establish his freedom from wrong by full explanation . . . and, when summoned by his superior on specific charges . . . he answered not at all."

Whether we agree that the instance described in the latter case amounted to misbehavior of such character, we do approve what the court said about the responsibilities of a police officer. Having a position of trust and civic responsibility, he should so demean himself as to merit the confidence and respect of the public and of his fellows. Only by behavior of the best quality can he hope to command discipline among those over whom he has authority. As the Pennsylvania court so aptly said, "no act of wrong-doing should attach itself to him" and "he should [be] keen to see that no taint of evil doing [attaches] itself to him. . . ."

We subscribe to the view that a chief of the police department, in uniform, does not conduct himself in a manner befitting his high position if while under the influence of alcoholic stimulants he is involved in an accident, at the time actually driving a vehicle belonging to the one to whom he owes his allegiance, the municipality. Such behavior is not calculated to instill respect for him in his subordinates or to win for himself or his force the confidence of the general public. It is indecorous and unbecoming to his high office. This is our view about the demeanor charged.

We proceed to the evidence, and shall explore it only to the extent of determining whether there was any substantial evidence to sustain the charges, refraining from weighing that

testimony or comparing it to testimony offered in refutation. Hammond v. Curry, 153 Fla. 245, 14 So. (2nd) 390.

From appellant's own statements we learn that he played golf at the country club, had two drinks, took a shower, entered the car and began his drive into the city. He was in uniform. In reply to a question from his counsel: "You considered yourself on duty?" he replied; "Twenty-four hours a day, subject to call all the time." As he neared the city he observed a car approaching with but one light burning. Back of it he saw another light flashing. He evidently proceeded without taking proper caution, and "the first thing [he] knew he clipped the negro's car and . . . careened off to the right trying to get control of the car, swerved back on the highway and then went about twenty-five feet off the highway." By other witnesses it was said that there was the odor of liquor about appellant, his voice was thick, his speech was incoherent, his car traveled 126 feet after the impact and left the highway twice before stopping in the sand. Several soldiers who were passing at the time were injured.

Our examination of the record convinces us that there was "a legal and reasonable exercise of administrative judgment predicated upon required procedure and appropriate evidence" and that there was no " 'abuse of delegated authority or arbitrary or unreasonable action.' " Nelson v. Lindsey, 151 Fla. 596, 10 So. (2nd) 131. We are constrained to hold that there was evidence, even though controverted, to support the charge of improper conduct of such degree as to be denominated "unbecoming."

The appellees contend that appellant could have no judicial relief of Section 46 of Chapter 21233, Laws of Florida, Special Acts of 1941, providing that anyone who submits himself to the provisions of the act (creating a civil service system) waives "any right to take his dispute or disagreement to the Court of law or equity." This Section, coupled with Section 37, precludes, they contend, any action in a court of this State. The relevant part of the latter is that upon hearing of an appeal by the board from an order of dismissal "the Board shall make the final decision disposing of the appeal, which decision shall not be reviewable by any court." Com-

plete answer to this assertion may, we think, be found in the fifth amendment of the Constitution of the United States and Section 12 of the Declaration of Rights of the Constitution of Florida. By both, no person shall be "deprived of life, liberty, or property without due process of law."

Affirmed.

BUFORD, C. J., BROWN and SEBRING, JJ., concur.

ON PETITION FOR REHEARING

BROWN, J.:

In the petition for rehearing it is very earnestly insisted that the court in its original opinion departed from the opinion in the recently decided case of Hammond v. Curry. I do not think so.

The language used in the majority opinion in the case of Hammond v. Curry, 153 Fla. 245, 14 So. (2nd) 290, was in substance the same as that used in the opinion in this case. In the Hammond case, it was said:

"We are not unaware of the rule found in some of the earlier cases, notably, State ex rel. Lamar v. Johnson, 30 Fla. 433, 11 So. 845, restricting the power of the court in its examination into proceedings for the removal of officials; however, the rule has been relaxed to the extent that the courts will explore the record to determine whether there is any evidence to substantiate the charge."

And in the same case, the majority of the court, speaking through Justice THOMAS, also said:

"We do not have the idea, suggested by the judge's observation, that because the order of the director is, according to the phraseology of the charter provision, final, there can be no judicial review of the sufficiency of evidence to support it. We may determine whether there has been 'a legal and reasonable exercise of adminstrative judgment predicated upon required procedure and appropriate evidence as shown by the record as made,' or whether there has been an 'abuse of delegated authority, or arbitrary or unreasonable action.' Nelson v. Lindsey, supra."

The case of Nelson v. Lindsey, 151 Fla. 596, 10 So. (2nd) 131, 135, which was cited in the Hammond case, was also

brought here on appeal from a judgment rendered by the circuit court in an action of mandamus, wherein the functions of that writ were discussed.

In this petition for rehearing it is also stated that in the majority opinion in Hammond v. Curry, supra, this Court said:

"We shall pause here to say that it was the city's burden to prove this charge, as well as the others, by a preponderance of the evidence."

That may well be true, but when such case was brought to this Court for review of the circuit court's judgment it was held, in line with our previous decisions, that this Court not attempt to reconcile conflicting testimony, or choose that which we think most worthy of belief. The rule laid down was that this Court would determine "whether there has been a legal and reasonable exercise of administrative judgment predicated upon required procedure and appropriate evidence as shown by the record as made."

In this connection we might call attention to the case of State v. Whitman, 116 Fla. 196, 156 So. 705, which was an original action in mandamus in this Court, the respondent being the State Dental Board, in which the question of the weight to be accorded to administrative decisions in mandamus cases is discussed.

In a recent case, involving the review on appeal to this Court of a judgment of the circuit court in a certiorari proceeding brought to quash the action of a Board of Public Instruction in discharging a school principal, Laney v. Board of Public Instructions, 153 Fla. 728, 15 So. (2nd) 748, this Court said:

"The general rule is that administrative findings, in order to be upheld by the courts, must be supported by substantial evidence. This means that there must be evidence which supports a substantial basis of fact from which the fact in issue can be reasonably inferred. It must do more than create a suspicion of the fact to be established, and must be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. See State ex rel. v. Whitman, 116 Fla. 196, 156 So. 705; State ex rel. Hathaway v.

Williams, 149 Fla. 48, 5 So. (2nd) 260; Florida Motor Lines v. Railroad Commission, 101 Fla. 1018, 132 So. 851; Nelson v. Lindsey, 151 Fla. 596, 10 So. (2nd) 131; Great Southern Trucking Company v. Douglas, 147 Fla. 552, 3 So. (2nd) 526; National Labor Relations Board v. Columbia Enamel Company, 59 S. Ct. 502, 36 U. S. 292, 83 L. Ed. 660. The evidence in this case, tested by this rule, was insufficient to prove any of the charges."

We might observe here that the power and scope of review by certiorari of the quasi judicial action of administrative boards was discussed by this Court in Florida Motor Lines, Inc. v. Railroad Commissioners, 100 Fla. 538, 129 So. 876, and again in same styled case in 101 Fla. 1018, 132 So. 851. These cases have frequently been cited with approval. See Tamiami Trail v. Railroad Commission, 128 Fla. 25, 174 So. 451; State v. Williams, 149 Fla. 48, 5 So. (2nd) 269; Great Southern Trucking Company v. Douglas, et al., 147 Fla. 552, 3rd So. (2nd) 526; American Railway Express Co. v. Weatherford, 84 Fla. 264, 93 So. 740 and Ulsch v. Mountain City Mill Co. 103 Fla. 932, 138 So. 483, and (on rehearing) 140 So. 218. But on common law certiorari the appellate court must either quash the writ or quash the judgment of the inferior tribunal, whereas in cases where the writ of mandamus is available, the appellate court can require the inferior court or tribunal to perform such act or enter such judgment as the appellate court determines to be proper. Generally speaking, mandamus lies to compel the performance of a clear legal duty. See also 10 Am. Jur. 524-540, and 34 Am. Jur. 904, 907. But we have held in many cases that appellate review of judgments in certiorari cases does not extend to a consideration of the probative force of conflicting testimony where there is competent legal evidence to sustain the judgment. Atlantic Coast Line Ry. Co. v. Florida Fine Fruit Co., 93 Fla. 161, 112 So. 66, 113 So. 384; Medlin-Peacock Buick Co. v. Broward, 101 Fla. 600, 135 So. 156; American Railway Express Co. v. Weatherford, supra.

It is not necessary here for us to determine whether the scope of appellate review is broader in certiorari cases than in mandamus cases. But the writer is of the view that the

opinion of Mr. Justice THOMAS in this case goes about as far as this Court can go, under the authorities, in dealing with the scope of appellate review of judgments in mandamus cases attacking the orders of administrative boards.

For the reasons above pointed out, I concur in holding that the original opinion and judgment should be adhered to, and the petition for rehearing denied.

CHAPMAN, C. J., BUFORD, THOMAS and SEBRING, JJ., concur.