1 Cal.Rptr. 898]

[Civ. No. 23548. Second Dist., Div. Two. Jan. 5, 1960.]

HARRY RUDOLPH, Appellant, v. ATHLETIC COMMIS-
SION OF THE STATE OF CALIFORNIA et al., Re-
spondents.

2

Covey & Covey and Jules J. Covey, for Appellant.

6

Stanley Mosk, Attorney General, and Miles J. Rubin, Deputy Attorney General, for Respondents.

ASHBURN, J.—Prior to its revocation appellant Harry Rudolph, also known as Babe McCoy, held a license as boxing matchmaker issued to him by respondent Athletic Commission of the State of California. An accusation was duly filed charging him with nine separate and distinct counts of violations of sections 18681, 18682 and 18762 of the Business and Professions Code, and sections 436, 468, 470, 559 of title 4 of the California Administrative Code pertaining to boxing. The commission upheld all of said charges and ordered his license revoked upon each separate count. Rudolph thereupon sought mandate under section 1094.5, Code of Civil Procedure, annulling the commission's order of revocation and directing it to restore his license. The trial court affirmed and Rudolph has appealed.

 One of his major contentions is that the evidence is insufficient to support the finding upon any count of the accusation and hence the trial court's affirmance of the commission's order is erroneous. The argument is predicated upon the assumption that it was the duty of the trial judge to independently weigh the evidence and to make his own finding with respect to each charge. Respondent contends that the Athletic Commission is one of those statewide agencies whose findings must be tested by the substantial evidence rule of section 1094.5, subdivisions (b) and (c), Code of Civil Procedure.

We hold that respondent's position is correct. While legislatively created statewide agencies do not have judicial powers without constitutional sanction in some form, and their rulings are subject to independent weighing of the evidence by a court, that is not true of such agencies as are created by the Constitution and thereby given adjudicatory power or given such power by the Legislature in the exercise of a delegation of authority conferred upon it by the Constitution. (See *Standard Oil Co.* v. *State Board of Equalization*, 6 Cal.2d 557, 559 [59 P.2d 119]; *Covert* v. *State Board of Equalization*, 29 Cal.2d 125, 131 [173 P.2d 545]; *Weiss* v. *State Board of Equalization*, 40 Cal.2d 772, 775 [256 P.2d 1]; *Boren* v. *State Personnel Board*, 37 Cal.2d 634, 638 [234 P.2d 981]; *Shepherd* v. *State Personnel Board*, 48 Cal.2d 41, 46-47 [307 P.2d 4]; *Sandstrom* v. *California Horse Racing Board*, 31 Cal. 2d 401 [189 P.2d 17, 3 A.L.R.2d 90].)

 The Athletic Commission was created by an initia-

tive measure of November 4, 1924, providing *inter alia* for the granting and revocation of licenses. Section 11(g) says: "Such licenses may be revoked by the commission upon such cause as the commission shall deem sufficient." (Stats. 1925, p. XCIII.) Section 25¾ of article IV of the Constitution, adopted on November 8, 1932, provides: "The Legislature may provide for the supervision, regulation and conduct, in such manner as it may determine, of wrestling matches or exhibitions and of boxing and sparring matches or exhibitions; . . . The Legislature in the exercise of the power granted herein may amend, revise, or supplement any part of that certain initiative act approved by the electors November 4, 1924, entitled 'An act to authorize boxing and wrestling contests for prizes or purses, or where an admission fee is charged, and limiting such boxing contests to 12 rounds; to create an athletic commission empowered to license such contests and the participants therein; to prescribe conditions under which licenses shall be issued and contests held; to declare that amateur boxing contests conducted under section 412 of the Penal Code shall be subject to the provisions of this measure and under the sole jurisdiction of such commission in all cases wherein an admission fee is charged spectators to witness such amateur boxing contests.' " The propriety of such delegation of power to the Legislature is not open to question. (See *Southern Calif. Jockey Club, Inc.* v. *California etc. Racing Board,* 36 Cal.2d 167, 171 [223 P.2d 1].) ▆▆ The delegation of power to amend, revise or supplement the initiative act plainly amounts to a ratification of its terms, including the power of the Athletic Commission to revoke licenses for cause shown. ▆▆ Such action necessarily involves the judicial function. (*Covert* v. *State Board of Equalization, supra,* 29 Cal.2d 125, 131; *Weiss* v. *State Board of Equalization, supra,* 40 Cal.2d 772, 775.)

▆▆ In 1941 the Legislature adopted sections 18600-18782, Business and Professions Code. (Stats. 1941, ch. 45, p. 632.) Section 18681, as amended at the same session (Stats. 1941, ch. 1151, p. 2867) and since said time, has provided: "Licenses issued under this chapter may be suspended or revoked by the commission upon such cause as it deems sufficient. If any license is suspended or revoked said board shall publicly state its reasons for so doing and cause an entry of said reasons to be made on the minute book of the commission. Such action shall be final, except that the propriety of such action is subject to review, upon questions of law only, by the

superior court of the county within which such license was to be exercised. The action of the commission shall stand unless and until reversed by the court." In 1942 section 25¾ of article IV of the Constitution was amended in some respects but the language above quoted from the 1932 section was reenacted without change. That these constitutional provisions operate by implication to ratify the original initiative measure of 1924 and to authorize the subsequent legislation above noted seems clear on principle and upon the authority of *Shepherd* v. *State Personnel Board, supra,* 48 Cal.2d 41, 47, and *Sandstrom* v. *California Horse Racing Board, supra,* 31 Cal.2d 401, 412-413. This means that the legislative grant of adjudicatory power to the commission is valid and its action can be reviewed only upon legal questions,—whether the evidence is legally sufficient and like questions enumerated in section 1094.5.

In the instant case the findings of the trial judge are susceptible to the interpretation that he weighed the evidence, thus exceeding his prerogative. Paragraph VII of the findings uses this language: "That in its Findings of Fact and Determination of Issues the respondent Commission found and this court now finds." Then follows a quotation of the entire findings made by the commission. Subdivisions (c) and (d) of finding XV declare the findings of the commission to be supported by substantial evidence, and paragraph XVI says: "That this court, upon its independent consideration and review of all of the evidence adduced at the administrative hearing, adopts the Findings of Fact and Determination of Issues of the said respondent Commission as its own." Though ambiguous in this respect the findings seem to reflect a weighing of the evidence by the trial court, which also made additional findings (in numbers VIII, IX, X, XI, XII); this fact seems to strengthen the inference of its having weighed the evidence. But if that be true, appellant has no complaint for that is what he asserts should have been done.[1] If the trial court did weigh the evidence we can see no prejudice to have been suffered by appellant for the result reached was necessarily an affirmance of the sufficiency of the evidence to support the board's findings.

---

[1]The caption to the argument on page 147 of appellant's brief reads: "The Lower Court had no authority in this proceeding to exercise its independent judgment on the evidence." But the argument which immediately follows shows the word "no" to have been included inadvertently.

The nine charges which were upheld and upon each of which revocation of appellant's license was ordered, are that appellant was guilty of the following derelictions: I. Entered into a partnership with Edwin R. Stanley in 1945 in the management of boxer Shepherd and divided with Stanley the manager's share of the receipts in five of Shepherd's matches, a violation of section 559,[2] title 4 of the California Administrative Code, subjecting his license to suspension or revocation as provided by Business and Professions Code, sections 18681-18682.[3] II. Instructed Edwin R. Stanley, manager for boxer Hughes, to have Hughes lose a boxing match to Joe Kahut in Portland, Oregon, on June 28, 1946, a violation of Business and Professions Code, section 18762.[4] III. Instructed boxer Watson Jones to lose three specified matches on dates in 1949 and 1950, in violation of Business and Professions Code, section 18762. IV. Acted in the capacity of manager for boxer Watson Jones between December 31, 1948 and September 25, 1950, in violation of section 559, title 4 of California Administrative Code, subjecting his license to suspension as provided in section 436, title 4,[5] and to suspension or revocation under Business and Professions Code, sections 18681 and 18682. V. Instructed boxer Georgie Hansford to lose a boxing match to Enrique Bolanos in San Antonio on April 2, 1946, a violation of Business and Professions Code, section 18762. VI. Testified falsely under oath on March 20, 1956, before a hearing officer in Los Angeles in that he denied that he telephoned from Los Angeles to Georgie Hansford in Chicago and told him to go to San Antonio when in fact he

[2]Administrative Code, title 4, § 559: "Financial Interest. No . . . matchmaker of a club shall be permitted to act directly or indirectly as manager of a boxer, or to hold any financial interest in such management or in the boxer's ring earnings."

[3]Bus. & Prof. Code, § 18681: "Licenses issued under this chapter may be suspended or revoked by the commission upon such cause as it deems sufficient. . . ."

Bus. & Prof. Code, § 18682: "Every club or person licensed under this chapter is subject to such rules and regulations, and amendments thereof, as the commission may prescribe."

[4]Bus. & Prof. Code, § 18762: "Every officer of any club . . . or person, who conducts, gives or participates in any sham or collusive boxing contest, . . . shall be deprived of his license by the commission and shall be disqualified from receiving a new license or a renewal of a license."

[5]California Administrative Code, § 436, title 4: "Any promoter or matchmaker found guilty of managing a boxer shall have his license suspended, and, in case of a promoter, his club license may be revoked."

10

did so, in violation of section 470, title 4,[6] California Administrative Code. VII. Entered into a partnership with one Peter John Francis in June, 1945, in the management of boxer Georgie Hansford, and divided with Francis the manager's share of the receipts of four specified matches, in violation of section 559, title 4, California Administrative Code. VIII. Instructed boxer, Tommy Campbell, to lose a boxing match to Art Aragon in Los Angeles on May 16, 1950, and to lose a match to Del Flannagan in Minneapolis on June 8, 1951. Violations of Business and Professions Code, section 18762. IX. Lived with and associated with one Cecil Imes, a convicted felon, in 1941; associated with one Alexander Piascik, a convicted felon, in 1941; and associated with Mickey Cohen, "a notorious criminal racketeer," loaned Cohen money and testified as a witness in regard to loans to Mickey Cohen at the latter's trial for income tax evasion,—violations of section 470, title 4, Administrative Code, subjecting his license to suspension as provided in section 470, title 4, and to suspension or revocation, Business and Professions Code, sections 18681 and 18682.

Appellant argues each of these matters upon the basis of preponderance of evidence, reviewing conflicting evidence and inferences, challenging the credibility of the witnesses called in support of the accusation, asserting inherent improbability (in disregard of the limitations upon that argument as explained in *People* v. *Huston*, 21 Cal.2d 690, 693 [134 P.2d 758]), lack of corroboration (unnecessary; see Code Civ. Proc., § 1844; *Marlo* v. *State Board of Medical Examiners*, 112 Cal.App.2d 276, 282 [246 P.2d 69]), complaining of hearsay (though admissible for the purpose of supplementing or explaining any direct evidence; Gov. Code, § 11513, subd. (c) ; 2 Cal.Jur.2d, § 147, p. 251),—all to the end of establishing that the preponderance of the evidence lies with appellant.

We recognize no obligation resting upon us to demonstrate the correctness of our conclusions with respect to sufficiency of the evidence. Suffice it to say that the evidence is substantial and sufficient to sustain each of the findings except those pertaining to the gist of count IX, viz.: "It is

---

[6]California Administrative Code, § 470, title 4: "Any person holding a license under the Commission may be suspended for violations of the law or the rules, or for arrest or conviction on a charge involving moral turpitude or for any action by a licensee of unbecoming conduct at any time or place which is deemed by the Commission to reflect discredit to boxing or wrestling."

true, as alleged in the ninth count of the accusation, that in 1941 respondent lived with and associated with one Cecil Imes who had previously been convicted of a felony and that in 1941 respondent associated with one Alexander Piascik who had been previously convicted of a felony. Respondent associated with Mickey Cohen, a notorious criminal and racketeer. Respondent loaned Cohn substantial sums of money and respondent testified as a witness for the defense in regard to the loans to Mickey Cohen at Cohen's trial for income tax evasion.''

Although said Imes had been convicted of robbery and did live with appellant for about a year, the record leaves uncertainty as to whether appellant then had knowledge of such conviction and the commission made no finding on the subject.

Concerning Piascik, it appears that appellant, after he had been informed of the fact that Piascik had been in San Quentin, promised boxing manager Cardenas to give him a fight when he got into shape, but the parole officer would not let him fight. He visited appellant with Imes at times after the latter ceased to live with appellant but was still working for him.

Concerning one Mickey Cohen the evidence shows that he visited appellant a few times, appellant loaned him some money for which Cohen is now indebted in the sum of $5,000, and that appellant testified in behalf of Cohen when he was tried upon a charge of Federal income tax evasion. In support of the characterization of Cohen as a ''notorious criminal and racketeer'' the evidence consists of the opinion of a retired officer of the Los Angeles Police Department that after some four years of investigation of Cohen he considered him ''a racketeer, a hoodlum and a mobster.'' The witness also said, on cross-examination: ''However, he was engaged in, as he stated to me, a gambling enterprise; had several games going. That he had considerable in this enterprise, and he was going to get it back by gambling. And then we had information that he was engaged in bookmaking, and pretty well cut in all over this entire territory. In other words, he had an organized racket with a number of people around him, bodyguards, and which involved arrests of some of these people for being armed, even with a machine gun. Therefore, from my experience with him I am of the very strong opinion that he was a mobster, hoodlum, a racketeer.'' We cannot accept this as anything other than hearsay which, under

Government Code, section 11513, subdivision (c), will not sustain a finding because "[h]earsay evidence may be used for the purpose of supplementing or explaining any direct evidence but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (See *Nardoni* v. *McConnell*, 48 Cal.2d 500, 504 [310 P.2d 644].)

On the whole we conclude that the evidence in support of count IX is too unsubstantial to support the commission's finding thereon. That charge seems to be but a make-weight.

■■■ However, that does not affect the result for appellant was found guilty of eight other violations of law or applicable rule of the commission, and his license was revoked because of each separate violation. The ninth count therefore becomes immaterial, whether the finding thereon is correct or not. It cannot affect the penalty or change the ultimate result, revocation, in any manner or degree. See *Black* v. *State Personnel Board*, 136 Cal.App.2d 904, 912 [289 P.2d 863] ; *Thayer* v. *Board of Osteopathic Examiners*, 157 Cal.App.2d 4, 9 [320 P.2d 28].

■■■ Appellant was denied due process, so he says, because (1) he had insufficient notice of hearing, and (2) was denied a continuance for the purpose of procuring the presence of numerous and scattered witnesses.

The accusation was filed on October 23, 1956, and served upon appellant on the following day, together with a notice that the hearing had been set for November 8, 1956. This gave him a full 15 days to prepare, the same period prescribed by Government Code, sections 11506 and 11509, for a hearing under the California Administrative Procedure Act, which act does not govern the instant procedure (Gov. Code, § 11501; 2 Cal.Jur.2d, § 103, p. 195) but furnishes a persuasive precedent. ■■■ Procedural due process demands that reasonable notice of an administrative hearing be given as a prerequisite to validity thereof. *Litchfield* v. *County of Marin*, 130 Cal. App.2d 806, 813 [280 P.2d 117] : "The questions of notice and due process are so inextricably part and parcel of each other that there could be no due process without the sovereign following some procedure which according to common experience should reasonably give notice of impending interference with ownership or right to possession. But there is no constitutional mandate of which we are aware which makes specific how that notice is to be given or which form it must take. Therefore the Legislature in prescribing the notice to

be given as an essential element of due process is limited only by the inferred constitutional mandate that the notice must be such as would according to common experience be reasonably adequate to the purpose. It is not enough to say that because different sovereign agencies may differ in some requirements and that because some may employ different methods of conveying notice to the owner than others, the one requiring the least notice is thereby denying due process. If measured by common everyday experience the least notice actually required should appear reasonably adequate under the circumstances to inform the owner, then it is within the constitutional power of the sovereign agency to so limit it. . . ."

In this case we experience no difficulty in reaching the conclusion that the notice was reasonable. The matters here under investigation were substantially the same as those which had been canvassed by a committee appointed by the governor to conduct an inquiry on behalf of the Department of Professional and Vocational Standards of the State of California, Departmental Boxing and Wrestling Survey. The present record is replete with references made to testimony of appellant and other witnesses who testified at that hearing and again in the instant proceeding. Little of surprise could have been concealed in the nine charges brought before the Athletic Commission.

On November 8, the first day of the hearing, appellant appeared through his attorney who made a motion for a reasonable continuance to enable him to prepare his defense. No showing of diligence was made nor any offer to prove what the witnesses would testify. No affidavit in support of the motion was presented. It was denied. Thereupon proof was taken for three days, the only testimony being that of persons called in support of the accusation plus one witness called out of order by the defense. Thereupon a continuance was taken from November 10 to November 29. Upon resumption of the hearing on the last named date the motion for a continuance was not renewed and no showing was made of inability to contact or produce any of the many witnesses counsel had mentioned in the motion of November 8th. Without further objection to proceeding the evidence on behalf of the defense was produced on November 29 and 30.

It is true that an amendment to the accusation was filed over appellant's objection at the opening of the hearing on the 8th of November; it added a tenth count, making an

additional charge of misconduct. But when it had been received the enforcing officer said: ''May I go back to that point again, that in this proceeding, as he has referred to it, as to whether he will be tried on Count 10, I wish to state again it is not my intention to bring any evidence in on Count 10 at this time until such time as the Commission feels that he has been given a reasonable time to prepare a defense to Count 10, so that any evidence at this time in this proceeding will not bear on Count 10.'' And no evidence was produced in support of it; same was dismissed upon motion of the enforcing officer (the attorney presenting the charges) at the conclusion of his case and appellant never was called upon to meet it.

The adequacy of the notice of hearing and the propriety of denial of the continuance blend into the single question of whether appellant was denied due process. We hold that the notice was not unreasonably short in view of all the circumstances, that there was no abuse of discretion in denying the continuance and that appellant was not deprived of due process of law.

Pursuing the same line of thought counsel for appellant assert that the commission was prejudiced against him to the extent that it denied him a fair hearing. He inveighs against the commission for having acted as prosecutor and judge, saying that ''[a]lthough such combination may not in and of itself constitute a denial of due process, it may become so if the bias or prejudice of one or more members of the administrative tribunal manifests itself to a degree which appellant considers was present at the hearing before the State Athletic Commission.'' Pertinent is this passage taken from 2 Cal.Jur.2d, § 126, page 226: ''While the combination, in quasi judicial administrative proceedings, of the functions of prosecutor and judge may offend concepts of fair play deeply rooted in the Anglo-American judicial tradition of justice, such a combination within the agency is not necessarily a denial of due process, although it may become so if the bias or prejudice of a member of the administrative tribunal becomes such as to persuade a court on review that the hearing was grossly unfair. But in the absence of a showing of such extreme bias or prejudice, the performance by the agency of both the prosecuting and the judging function is permitted.'' Supporting the text are *Murphy* v. *Board of Medical Examiners,* 75 Cal.App.2d 161, 162 [170 P.2d 510]; *Hohreiter* v. *Garrison,* 81 Cal.App.2d 384, 392 [184 P.2d

323]; *Chosick* v. *Reilly*, 125 Cal.App.2d 334 [270 P.2d 547]. In the last cited case it is said, at pages 337-338: "Although some division between the prosecuting and adjudicating functions and personnel of administrative boards may well be desirable, no definite rules in this respect, except as to the use of hearing officers, are contained in the provisions of the Government Code relating to administrative adjudication or imposed by any decisions in this state cited by appellants or known to us. . . . In general, the fact that an administrative agency is both accuser and judge is not considered to deprive the accused of due process of law. (*Hohreiter* v. *Garrison, supra,* 81 Cal.App.2d at p. 392.) We see no good reason why, this being so, the same trained personnel cannot legally advise and assist the agency in both functions if such assistance does not violate any statutory provisions and if the agency itself makes the actual decision."

Appellant's attempt to show that the hearing was vulnerable according to the foregoing standards consists of an implied claim that the commissioners were consulting a document not in evidence and that one commissioner was excessively zealous in the cross-examination of witnesses, especially appellant. The examples set forth in the brief are not sufficient to sustain those charges. Counsel say: "To set forth in this brief all of the comments, statements and questions of Commissioner Bucciarelli would unduly prolong this brief. The foregoing are cited as examples." It is not our function to comb the record for support for counsel's contention. ▆▆ Moreover it is true, as stated in *West Coast etc. Co.* v. *Contractors' etc. Board,* 72 Cal.App.2d 287, 300 [164 P.2d 811], that "the fact that the hearing officer may have exceeded the bounds of propriety does not entitle petitioner to have the decision of the administrative board annulled when competent and admissible evidence sustains the findings and order made by such board." The argument of prejudice and unfair hearing cannot be sustained.

▆▆ The claim that the commission exceeded its jurisdiction in various respects is untenable. Concerning several counts it is asserted that the commission had power to suspend appellant's license but not to revoke it. This applies to counts I, III, IV, VII and IX. The basis of the argument is section 436 of title 4 of the Administrative Code, which says: "Any promoter or matchmaker found guilty of managing a boxer shall have his license suspended, and, in the case of a promoter, his club license may be revoked"; also section 470 of the same

title, which says: "Any person holding a license under the Commission may be suspended for violations of the law or the rules, or for arrest or conviction on a charge involving moral turpitude or for any action by a licensee of unbecoming conduct at any time or place which is deemed by the Commission to reflect discredit to boxing or wrestling." However, section 18681, Business and Professions Code, provides: "Licenses issued under this chapter may be suspended or revoked by the commission upon such cause as it deems sufficient." Thus the commission is given discretion as to suspension or revocation in any instance where good cause exists. Section 436, *supra,* is mandatory, making suspension obligatory for a matchmaker who is found guilty of managing a boxer, but not precluding the discretionary penalty of revocation pursuant to section 18681 of the statute. Section 470 of title 4 is itself permissive in form and does not prohibit revocation. It is but part of an article devoted to the subject of suspensions. Any conflict that might seem to exist between the rule and the statute would have to yield to the statutory power of revocation. The commission cannot abrogate any of its statutory functions through a narrowing rule or regulation.

It is argued with respect to counts II, III, V, VIII, each of which alleges that appellant instructed a boxer directly or through his manager to lose a fight arranged by appellant and that the fight was held and lost pursuant to said instructions, that the applicable statute is section 18762, Business and Professions Code, which makes revocation mandatory in the case of any licensee "who conducts, gives or participates in any sham or collusive contest"; also that the evidence does not show and the commission did not find that the fighter lost the match "pursuant to said instructions" and hence it cannot be held that appellant participated in a sham or collusive fight. True, the commission's findings do not cover the fact of the fight or its loss pursuant to the instructions. Had one been made the evidence clearly would have supported it, for such facts, like any other, may be established circumstantially, and that was done in this case.

So far as the defect in the findings is concerned it is not fatal because the issue was fully tried, a penalty assessed which necessarily presupposed the fact of a fight and its deliberate faking pursuant to appellant's instructions. The applicable law is thus stated in *Steele* v. *Los Angeles County Civil Service Com.,* 166 Cal.App.2d 129, 136-137 [333 P.2d 171]: "Findings of administrative tribunals are liberally

construed for the reason, among others, that they are often the product of laymen operating in an unfamiliar field. *Swars v. Council of City of Vallejo,* 33 Cal.2d 867, 872-873 [206 P.2d 355] : 'Although administrative findings must conform to the statutes governing the particular agency, they need not be stated with the formality required in judicial proceedings [citations]. In connection with the action of an administrative board, the fact that certain action is taken or recommendation made may raise a presumption that the existence of the necessary facts was ascertained and found [citations]. . . . Administrative findings may be general as long as they satisfy the dual requirements of making intelligent review by the courts possible and apprising the parties of the basis for administrative action.'

"*Bailey* v. *County of Los Angeles,* 46 Cal.2d 132, 136 [293 P.2d 449] : ' " [I]n connection with the action of such commission and board, composed usually of laymen, the fact that a certain action is taken or recommendation made raises the presumption that the existence of the necessary facts had been ascertained and found. [Citations.] We cannot perceive wherein appellant has been prejudiced by the absence of formal findings under the facts here present." ' (To the same effect, see also *Temescal Water Co.* v. *Department of Public Works,* 44 Cal.2d 90, 102 [280 P.2d 1] ; *Miller* v. *Planning Commission,* 138 Cal.App.2d 598, 603 [292 P.2d 278] ; *Sobo* v. *Board of Police Commissioners,* 145 Cal.App.2d 783, 788 [303 P.2d 104].)

"The last sentence quoted from the Bailey case, *supra,* points to the criterion to be applied to findings of administrative boards,—whether appellant has been prejudiced by informalities or other inadequacies of same. . . . See also to the effect that error occurring in an administrative proceeding does not vitiate the ruling unless shown to have been actually prejudicial to the appellant, *Roark* v. *State Bar,* 5 Cal.2d 665, 668 [55 P.2d 839] ; *Maryland C. Co.* v. *Industrial Acc. Com.,* 178 Cal. 491, 493 [173 P. 993] ; *Brewer* v. *Railroad Commission,* 190 Cal. 60, 77-78 [210 P. 511] ; *Ocean A. & G. Corp.* v. *Industrial Acc. Com.,* 180 Cal. 389, 393 [182 P. 35] ; *Walsh* v. *Industrial Acc. Com.,* 1 Cal.2d 747, 748 [36 P.2d 1072] ; *Frankfort General Ins. Co.* v. *Pillsbury,* 173 Cal. 56, 60 [159 P. 150] ; 2 Cal.Jur.2d § 223, p. 367 ; 42 Am.Jur., § 244, p. 686." To the same effect see *Palm Springs T. Club* v. *California Horse etc. Board,* 155 Cal.App.2d 242, 245 [317 P.2d 713]. Partici-

18

pation of appellant in the specified sham matches is adequately established.

■■■■ Without citation of supporting authority counsel for appellant assert: ''Furthermore, each count charging appellant with having participated in a sham and collusive boxing contest has reference to a boxing contest which took place outside of the State of California, and the Athletic Commission of the State of California has no extraterritorial jurisdiction. Its jurisdiction extends to sham or collusive boxing contests taking place within the State of California.'' This pertains to counts II, III, V and VIII. This contention is adequately answered by *Foster* v. *McConnell*, 162 Cal.App.2d 701, 708-709 [329 P.2d 32], which involved revocation of an insurance broker's restricted licenses. Concerning the contention that his offenses had occurred upon federal property not subject to the jurisdiction of the State of California, the court said: ''We are not concerned here with the question of the state making regulations concerning the selling of insurance on government reservations. We are concerned with the protection of the public from one holding a state insurance agent's license and who, regardless of whether his acts occur within or without the state, demonstrates that he does not maintain professional standards in his conduct of the insurance business. The situation is very similar to that concerning attorneys. . . . In his argument on this subject appellant states: 'A state may not punish one for doing in exclusively federal territory what by the law of the United States was lawful . . .' He thereby implies that it is lawful for an agent selling insurance on government property to misrepresent the terms of a policy to a prospective buyer—a proposition that is absurd on its face.''

■■■■ Count VI charges that appellant in testifying before a hearing officer, who had been appointed to conduct hearings into boxing and wrestling in California, falsely stated that he had not telephoned from Los Angeles to boxer Georgie Hansford, in Chicago, and told him to go to San Antonio, when in fact he had made said telephone call, a violation of section 118, Penal Code, of section 470, title 4, Administrative Code, and sections 18675 and 18681, Business and Professions Code. In attacking the charge and the sufficiency of the evidence to support it, appellant claims that proof ''by the testimony of two witnesses, or of one witness and corroborating circumstances'' was necessary under section 1103a, Penal Code. If that section were applicable the argument could not prevail,

for there is in this record proof by one or more witnesses, plus highly persuasive corroborating circumstances. Of course, section 1103a is not applicable to a proceeding of this kind. *Fischer* v. *State Bar*, 6 Cal.2d 671, 672 [58 P.2d 1277, 59 P.2d 805], is apposite. Fischer was disbarred because of perjury and subornation of perjury in a civil action. His claim that section 1103a, Penal Code, controlled the disbarment proceeding was rejected in the following language: "But disbarment proceedings are not criminal in character, and there is no necessity of establishing a case sufficient to justify criminal punishment. Proof of misconduct involving moral turpitude and justifying disbarment or other disciplinary action may be made by any evidence which is relevant and credible, and it is not necessary that it establish a particular crime within the rules governing conviction of criminal offenses." The same principle is applicable here. See *Marlo* v. *State Board of Medical Examiners, supra,* 112 Cal.App.2d 276, 282.

▮▮▮▮ Appellant also argues that the perjury falls within section 470 of title 4, which provides a penalty for "any action by a licensee of unbecoming conduct at any time or place which is deemed by the Commission to reflect discredit to boxing or wrestling." Without citation of supporting authority it is asserted that this language is void for uncertainty. "[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree. If his judgment is wrong, not only may he incur a fine or a short imprisonment, as here; he may incur the penalty of death." (Mr. Justice Holmes, in *Nash* v. *United States,* 229 U.S. 373, 377 [33 S.Ct. 780, 57 L.Ed. 1232].) In *Lorenson* v. *Superior Court,* 35 Cal.2d 49, 60 [216 P.2d 859], it is said: "To comply with the constitutional requirement of due process of law, the crime for which a defendant is being prosecuted must be clearly defined, but it is only necessary that the words used in the statute be well enough known to enable those persons within its reach to understand and correctly apply them. 'To make a statute sufficiently certain to comply with constitutional requirements it is not necessary that it furnish detailed plans and specifications of the acts or conduct prohibited.' (*People* v. *Smith,* 36 Cal.App.2d Supp. 748, 752 [92 P.2d 1039].)

"Although higher standards of certainty will be required of penal than of civil statutes (*Levy Leasing Co.* v. *Siegel,* 258 U.S. 242 [42 S.Ct. 289, 66 L.Ed. 595]), a statute is sufficiently certain if it employs words of long usage or with a common

law meaning, 'notwithstanding an element of degree in the definition as to which estimates might differ.' (*Connally* v. *General Const. Co.*, 269 U.S. 385 [46 S.Ct. 126, 70 L.Ed. 322]; *International Harvester Co.* v. *Kentucky*, 234 U.S. 216 [34 S.Ct. 853, 58 L.Ed. 1284]; *Nash* v. *United States*, 229 U.S. 373 [33 S.Ct. 780, 57 L.Ed. 1232].) For example, the courts have upheld statutes employing such terms as: 'to make diligent effort to find the owner' (*Pacific Coast Dairy* v. *Police Court*, 214 Cal. 668 [8 P.2d 140, 80 A.L.R. 1217]); 'unreasonable speed' (*Ex parte Daniels*, 183 Cal. 636 [192 P. 442, 21 A.L.R. 1172]); 'unjustifiable physical pain or mental suffering' (*People* v. *Curtiss*, 116 Cal.App.Supp. 771 [300 P. 801]); 'practice law' (*People* v. *Ring*, 26 Cal.App.2d Supp. 768 [70 P.2d 281]); and 'to the annoyance of any other person' (*People* v. *Beifuss*, 22 Cal.App.2d Supp. 755 [67 P.2d 411]).'' See also *Smulson* v. *Board of Dental Examiners*, 47 Cal.App.2d 584, 587 [118 P.2d 483]; *Becker* v. *Merrill*, 155 Fla. 379 [20 So.2d 912, 914]; *Goldsmith* v. *State Board of Education*, 66 Cal.App. 157, 165-166 [225 P. 783]; *People* v. *Darby*, 114 Cal.App.2d 412, 428 [250 P.2d 743]; 45 Cal.Jur.2d, section 37, page 561. Applying the reasoning of the foregoing authorities we hold that section 470 is not too vague to be valid. A licensee of the state who commits perjury in relation to the manner of exercise of his special prerogative needs no one to tell him that that is unbecoming conduct which reflects discredit upon boxing, the sport to which the license relates.

With respect to counts I and VII, appellant complains because he was held to have violated section 559 of title 4 through participating in the management of a boxer in 1945 and 1946; that section 559 was not adopted until May 23, 1947, and cannot lawfully be given retroactive effect. Counsel cite no supporting authority. The fact is that section 559 is section 226 of the 1925 rules and regulations as amended and renumbered. Pursuant to amendment of 1931 the section read: ''No club, or member or stockholder or official of a club, shall be permitted to act, directly or indirectly, as manager of a boxer or to hold any financial interest in such management or in the boxer's ring earnings.'' In 1947 the words ''or matchmaker'' were inserted after ''official'' with the result that the section then and thereafter has said: ''No club, or member or stockholder or official or matchmaker of a club shall be permitted to act'' etc. Respondent characterizes this as a clarifying amendment and we think it is such. Respondent's brief pertinently says: ''The function of a licensed match-

maker is to make boxing matches between licensed boxers. However, these matches can only be conducted upon the premises of a licensed club. Consequently, a matchmaker cannot perform his services without being associated with a club licensed to house such matches. Furthermore, it is only with special written permission obtained from the State Athletic Commission is it possible for a matchmaker to make matches for more than one club. (See section 432, title 4, California Administrative Code.) (See also respondents' findings of fact, paragraphs III and IV that respondent was employed as matchmaker by the Olympic Boxing Club continuously since 1942, and had authority to act for said club in official matters, Cl. Tr. pp. 24-25.) The relationship or affinity between a club and a matchmaker is obviously a very close one. In fact the synonym 'official of a club' fits matchmaker better than any other person affiliated with a club. Therefore, it is submitted that respondents' only purpose in amending Rule 236 in 1947 was to make more clear what was already the scope and purpose of that rule.'' The commission made this unchallenged finding: ''The respondent was employed in 1942 as matchmaker at the Olympic Boxing Club in Los Angeles, California, and has been so employed continuously since that time. As matchmaker for the Olympic Boxing Club, respondent negotiated contracts with managers and boxers and signed advance notices in the name of the Olympic Boxing Club. Respondent had authority to act for the Olympic Boxing Club in official matters.''

Upholding respondents' contention as to clarifying amendments are *Hammond* v. *McDonald,* 49 Cal.App.2d 671, 681 [122 P.2d 332] ; *County of Sacramento* v. *City of Sacramento,* 75 Cal.App.2d 436, 440 [171 P.2d 477] ; 45 Cal.Jur.2d § 179, page 679.

Laches on the part of the commission is asserted because of the delays just discussed, i.e., violations of rule or statute committed by appellant in 1941, 1945, 1946, 1948, 1949, 1950, 1951, 1956, and accusation not made until October 23, 1956. Counsel for appellant rightly assert that laches ordinarily is a question of fact. They also quote *Kimberlin* v. *Los Angeles City High School District,* 115 Cal.App.2d 459, 463 [252 P.2d 344], as follows: ''Laches in legal significance is not mere delay, but delay that works a disadvantage to another, mere delay being unimportant. The reasoning upon which the rule of laches is based is not alone a lapse of time during which the neglect to enforce a right has existed, but the changes of

conditions which have intervened.'' Prejudice as a result of the delay does not appear from the instant record.

Failure to prosecute a crime or pursue a remedy in a quasi-criminal proceeding or an administrative revocation of a license does not operate directly or indirectly as a bar in the absence of some statute of limitation. None is cited here and we are satisfied that none exists. *In re Lowenthal,* 78 Cal. 427 [21 P. 7], furnishes a guide for the ruling in the present case. That was a disbarment proceeding. The court said (p. 429) : ''We do not understand that a charge of this kind can be barred by the statute of limitations, or that it should be, under any circumstances. The fullest opportunity should be given to investigate the conduct of an attorney who is charged with a violation of his duties as such; and while this court might not be willing to disbar or suspend an attorney if it appeared that there had been unreasonable delay in the presentation of the charges, so that a fair opportunity could not be had for procuring the witnesses and meeting the accusation, we are not prepared to say, as a matter of law upon this demurrer, that the accusation is barred either by the express terms of the statute of limitations or by analogy.'' The lower court found against laches. If that plea would lie in a proceeding such as this (which is doubtful), it would be necessary in order for appellant to prevail that he show by uncontradicted evidence, all pointing in the same direction, that he has been prejudiced by the commission's nonaction. During all these years of delay in initiating proceedings to revoke his license appellant has been granted renewals from year to year. This fact argues that the commission did not know of the earlier transgressions of appellant and hence its delay resulted in advantage rather than prejudice to him.

Judgment affirmed.

Fox, P. J., and Herndon, J., concurred.