ALLEN, Judge.
Petitioners herein seek to have reviewed an order by the Circuit Court for Pinellas County wherein the court affirmed a decision by the Pinellas County Water and Navigation Control Authority, hereinafter called the Control Authority.
Respondents petitioned the Control Authority for a permit to fill in a portion of Boca Ciega Bay in Pinellas County. The Control Authority, under its empowering statute, appointed an examiner to take testimony and make recommendations. In due course, hearings were held and the examiner made his recommendation that the permit be granted. Various interested parties, including petitioners here, objected to the examiner’s findings and recommendation, and after hearing, the Control Authority adopted the examiner’s findings and granted the requested permit.
The Control Authority’s decision was then appealed to the Circuit Court for Pinellas County, and after hearing, that court entered an order affirming the decision appealed.
This is the second appearance of this case before this court. An. appeal was taken to this court from the decision of the Circuit Court of Pinellas County affirming the decision of the Pinellas County Water and Navigation Control Authority and granting the appellees herein a permit to fill certain lands in Boca Ciega Bay. A motion to dismiss the appeal was filed by the appellees on the ground that the circuit court, in reviewing the decisions of the Pinellas County Water and Navigation Control Authority, was sitting in its appellate capacity and that the District Court of Appeal had no jurisdiction of an appeal from the circuit court acting in such capacity. We held that, although this court did not have authority, under revised Article V of the Florida Constitution, F.S.A., to entertain this appeal as such, we would treat the appeal as a petition for certiorari and would review the lower court’s decision to the limited extent authorized by certiorari. See Alliance for Conservation of Natural Resources in Pinellas County v. Furen, Fla.App.1958, 104 So.2d 803.
The Circuit' Court, in affirming the Pinel-las County Water and Navigation Control Authority, said :
“Appellees made application for a fill permit pursuant to the terms of this act; the Board used a special examiner or master as permitted thereby who received and heard a voluminous amount of testimony, accompanied by a large number of exhibits, and thereafter filed the same with the Board, together with a recommendation that the application be granted.
“The Board thereupon, pursuant to the terms of such act, received and heard exceptions to the examiners findings, overruled the same and issued the *57 permit. From this action this appeal was taken.
“In ultimate effect the errors assigned and the arguments of appellants, attack the issuance of the permit itself, as distinguished from any particular feature or detail thereof; and no argument has been presented which would not be equally applicable to a fill or another permit therefor in the same location, and of substantially the same size.
“In consideration of appeals from actions of an administrative hoard exercising judicial or quasi-judicial powers there seem to be two well-established rules of law. One of such rules permits, or perhaps requires, the court to, in effect, re-try the case on the record and to enter its findings of fact and judgment of law, without regard to the previous findings of fact or judgment of such board.
“The other rule does not permit the court to make its own findings of fact and judgment applying such findings, hut requires the court to inspect the record and if there he substantial evidence supporting the findings of fact by the board, and that the board had not, in the opinion of the court, abused its discretion in reaching its conclusions upon such findings of fact, then the action of the board should be affirmed, otherwise, if its findings be unsupported, or if it be found to have abused its discretion, then the matter should be returned to the board for its further consideration in the light of the findings of the court.
* * * * i{S *
“The Supreme Court of our state has considered these rules in quite a number of instances and it is found that in appeals from board actions exercising quasi-judicial powers and without the authority of also exercising the boards’ discretion, generally the first rule above stated has been applied, but in instances where the board is authorized to exercise discretion in the application of the facts that it may find and determine, then the latter of the two rules has been generally held to be applicable.”
“Chapter 31182 places a very considerable discretionary power in the Pinellas County Board in applying its factual determinations to its consideration of an application for a permit, and it is therefore this court’s conclusion that the true and correct rule of law under which this appeal should be considered is the second of the rules above recited, the so-called ‘substantial evidence’ rule and the so-called ‘abuse of discretion’ rule, and this court has adopted such rule in its consideration of this appeal.
“The court has carefully inspected the testimony, the exhibits, the briefs of respective counsel, and has carefully listened to and considered the arguments of respective counsel. In each instance of a finding of fact by the Board, the court finds that there is substantial evidence supporting such finding; and such examination of the record and consideration of the cause having failed to reveal any abuse of its discretion by the Pinellas County Board, it follows that its action in issuance of the permit under consideration, should be, and the same is hereby affirmed.”
We are of the opinion that the lower court adopted the proper rule for reviewing the action of the Pinellas County Authority.
1. Fla.Jur., Admin.Law § 194, page 436, states the substantial evidence rule as follows :
“Aside from any possible contrary meaning in the statements that on statutory appeal from a determination of an administrative agency the determination should not be reversed un *58 less ‘clearly erroneous,’ judicial review of administrative action in Florida is governed by the substantial evidence rule, which, the Supreme Court has said, should be invoked in all cases in which the administrative tribunal has the authority to conduct the hearing and make the effective order and the reviewing tribunal makes its determination on the record of the administrative tribunal. This rule is akin to the rule which requires an appellate court to give great weight to the findings of fact made by a jury or a chancellor and to sustain such findings unless there is no substantial evidence to support them. It is a salutary rule, founded in good common sense and irrefutable logic, and should be adhered to religiously.
“Under this rule administrative determinations or findings are not subject to judicial review, or will not be disturbed, if supported by substantial or competent substantial evidence.”
In the case of Nelson v. State, 1945, 156 Fla. 189, 23 So.2d 136, the Supreme Court said:
“The question which is determinative of this case on appeal (and it was before the Circuit Court in a proceeding in the nature of an appeal) may be stated in more than one form. We prefer to pose the query in the following verbiage — does a consideration of the record in its entirety disclose the ruling of the City Commission to be sustained by substantial evidence? We have held, and it seems to be an almost universal rule, that the findings of fact made by an administrative board, bureau, or commission, in compliance with law, will not be disturbed on appeal if such findings are sustained by substantial evidence. (Citations omitted.) The underlying and salient reasons for this safe and sane rule need not be repeated here. The fact that it is not the province of an appellate court to try cases de novo on a cold typed transcript is too elementary to require emphasis. * * *
;¡í í|í í{í }(s jJs
“Upon a careful consideration of the complete record, we find that the ruling of the City Commission is sustained by substantial evidence. It was the failure of the learned Circuit Judge to apply the rule which we invoke herein which caused him to fall into error. It is not difficult, however, to understand how a Circuit Judge, whose daily work is predominantly fact finding in character, might easily overlook this rule.”
While we have heretofore stated that the circuit court correctly adopted the substantial evidence rule in his review of the actions of the County Authority, we would not reverse his decision on certiorari even if he was in error in determining this question. The Florida Supreme Court, in the case of Sims Tire Service, Inc. v. Parker, 1941, 146 Fla. 23, 200 So. 524, 525, had before it an appeal from an order of the circuit court affirming on appeal an award by the Florida Industrial Commission to the widow of a deceased employee. The main contention on the appeal was that the deputy commissioner and, subsequently, both the full commission and the circuit court, by their confirmation of the award made by the deputy commission, erroneously gave the statutory presumption the force and weight of evidence after evidence was adduced as to whether the decedent was on his way home from his place of employment at the time of the fatal injury, or was then on a mission for his employer, in which latter event the widow would be entitled to the award.
In the above case the Court said:
“The evidence is ample to sustain the finding, and the award as made and approved by the Deputy Commissioner, the full Commission and the Circuit Court, without considering the *59 statutory presumption; and the reference to the statutory presumption mentioned in the proceedings may be regarded as immaterial and harmless sur-plusage. No substantial error is made to appear and the order appealed from is affirmed.”
It will be observed that in the above case the Supreme Court had the case on appeal from the circuit court where it would have a much broader review of the circuit court’s decision than this court would have in the instant case, as we are limited to reviewing the decision by common law certiorari.
On a petition for rehearing of the above case, the Supreme Court denied the same and stated in their opinion:
“The statutes of the State contain the following:
“ ‘It shall be the duty of the court on an appeal or writ of error to examine the record, to reverse or affirm the judgment, sentence or decree of the court below, or to give such judgment sentence or decree as the court below ought to have given, or as to it may appear according to law.’ Sec. 4637 (2918), C.G.L.; Act of Feb. 10, 1832.
“ ‘No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case it shall appear that the error complained of has resulted in a miscarriage of justice. This section shall be liberally construed.’ Sec. 4499 (2812), C.G.L.”
The appellee Trustees assign as error the opinion of the court in which he states that the trustees of the Internal Improvement Fund conveyed directly to the ap-pellees a portion of the land made the subject of the application and in which deed the trustees included certain requirements relative to the filling of the land, and further said:
“It is the opinion of this court that the Trustees of the Internal Improvement Fund of the State of Florida, by such instrument and such conveyance, established the public policy of the State of Florida concerning this particular fill and that such public policy so established, is irrevocable so long as the conveyance above referred to remains a valid instrument. It is noted that the validity of such conveyance by the Trustees of the Internal Improvement Fund of the State of Florida has not been questioned or attacked in this proceeding, and the same is therefore assumed to be a valid and existing conveyance.
“It is this court’s further opinion, that the fact of, and public policy of, this particular fill, having been established prior to the enactment of Chapter 31182, Laws of Florida 1955, such act provided no field of operation for the Pinellas County Board, excepting reasonable regulatory powers concerning details of this fill, rather than the discretionary power to permit or prohibit the fill itself.”
We are of the opinion that the able circuit judge erred in this conclusion of law; but we conclude that this error does not affect his decision affirming the action taken by the Pinellas County Authority, since the court subsequently found, and the evidence before the Board reveals, that there was compliance with Chapter 31182 in the respondent’s application for a permit.
Chapter 31182, Laws of Florida, Special Acts of 1955, created the Pinellas County Water and Navigation Control Authority and gave it broad powers in order to provide for regulation and control of all water, water courses, waterways, inlets, bays and bayous and their alteration by *60 dredging, filling, pumping, or otherwise altering the shoreline, land contours and/or water areas, and in the interest of public rights, public welfare, and the preservation of the natural beauty and attractiveness of the bays, bayous, etc., and to assist boating activities and navigation.
The Act provided for the filing of applications with the “Authority” which should, after public notice, conduct hearings on the application. Section 8(e) provides as follows:
“That the Pinellas County Water and Navigation Control Authority, in order to prevent undesirable situations which might result from the promiscuous and uncontrolled filling of bottom land or the excavating of basins or channels without regard to what might result therefrom, shall obtain such engineering or other data and hear such testimony under oath as may be necessary to determine.
“1. The effect of the proposed plan or development on the use of said waters in said county for transportation and recreational or other public purposes and public conveniences.
“2. The effect of the proposed plan or development on the free use of the waterways and navigable waters.
“3. The effect of the proposed plan or development upon erosion control.
“4. The effect of the proposed plan or development upon the flow of water or tidal currents in said county.
“5. The effect of the proposed plan or development upon erosion, shoaling of channels, formation of stagnant pockets ljlcely to collect debris and upon extraordinary storm damage.
“6. The effect of the proposed plan or development upon the natural beauty and recreational advantages of Finellas county.
“7. The effect of the proposed plan or development upon the conservation of wild life, marine life, and other natural resources.
“8. The effect of the proposed plan or development upon the uplands surrounding or necessarily affected by said plan or development.
“The Board, after public hearing, from said data and testimony, shall make findings of fact and determine whether or not the proposed plan or development will materially affect any of the rights and interests of the public heretofore set out in this section. Said findings of fact and said deter-' mination shall be reduced to writing and shall be filed with the Clerk of the Board and, when so filed, shall be open to the public. The Board shall, if it desires, or at the request of any applicant or any objector cause the testimony taken at the public hearing to be reported and transcribed, which testimony together with all engineering and other data considered by the Board shall be filed with the Clerk of the Board and, when so filed, the same shall be open to the public; provided, however, that the Board may require the person or persons requesting the reporting of said testimony to post with the Board sufficient moneys to pay the costs of reporting and transcribing the same.
“If the Authority shall find that the proposed plan or development will not materially affect adversely any of the rights and interests of the public heretofore set out in this section, said Authority shall then grant and issue a permit for said proposed plan or development or any modification thereof according to the provisions of this act as hereinafter provided.
“If the Authority shall find that the said proposed plan or development will materially affect adversely any of the rights or interests of the public *61 heretofore set out in this section, the said Authority shall deny the application and refuse to issue a permit for the proposed plan or development.
“Said permit, if granted, shall not he effective until thirty (30) days after the filing of the determination with the Clerk and, if a petition for rehearing is filed, until said petition is heard and determined.
“Any person, firm or corporation, including the state of Florida, Pinellas county, and any municipal corporation in said county, in the event they are aggrieved by the findings of fact and determination of the Board, may within thirty (30) days of such findings and determination, petition for rehearing, stating in their petition the grounds upon which the governing authority has erred in its findings and wherein they are aggrieved by said findings. The governing authority may, in its discretion, grant or deny such rehearing.
“Any person, firm or corporation, including the state of Florida, Pi-nellas county and any municipal corporation in said county, who is aggrieved by the Board’s ruling on the petition for rehearing shall have the right to have the entire cause reviewed by the Circuit Court of the Sixth Judicial Circuit of Florida in and for Pinellas county as provided by law for other appeals to the Circuit Court.”
The Act further provided that the Board, if it deemed it necessary, could employ an examiner or examiners who would conduct the public hearings provided for by Section 11 of the Act. Such examiner, after a hearing, is required to make a report to the Authority of his findings of fact and recommendation, and if any exceptions are taken to the examiner’s report, a hearing should be had before the Board on such exceptions. The Act also provides that the Board should either confirm the examiner’s report or make such other determination in the matter as is proper. After the entry of said order, the procedure for rehearing before the Board and review by the circuit court is the same as the procedure applicable when the Board originally hears the testimony.
As we have hereinbefore stated, this case is being considered not as an appeal, but as a petition for certiorari. The Supreme Court, in the early case of Basnet v. City of Jacksonville, 1882, 18 Fla. 523, 526, said:
“ * * * The question which this certiorari brings here is not whether, upon the evidence offered before the Judge, the municipal corporation of Jacksonville exceeded its authority in the matter of making this assessment, but whether the Judge exceeded his jurisdiction in hearing the case at all, or adopted any method unknown to the law or essentially irregular in his proceeding under the statute. A decision made according to the forms of law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as to what the law is as applied to facts, is not an illegal or irregular act or proceeding remediable by certiorari.
“We cannot make this writ serve the purpose of an appellate proceeding in the nature of a writ of error with a bill of exceptions. By this remark we do not mean to intimate that a writ of error or appeal lies here. We determine that question when it arises * * *
“A certiorari is appellate in its character in the sense that it involves a limited review of the proceedings of an inferior jurisdiction. It is original in the sense that the subject matter of the suit or proceeding which it brings before the court are not here rein-vestigated, tried and determined upon the merits generally as upon appeal at *62 law or writ of error. Thus the Supreme Court of the United States speaks of such writs ‘as writs to review the proceeding's of inferior courts as a matter of original jurisdiction,’ and showing errors of fact is only-admissible to show want of jurisdiction or serious irregularity or illegality in procedure.”
In the excellent article, “Certiorari in Florida,” by William H. Rogers and Lewis Rhea Baxter, 4 U.Fla.L.Rev. 477, 493 (1951), under sub-topic “Scope of the Inquiry in Common Law Certiorari,” it is said:
“Review by certiorari is quite different in principle from review by appeal. On appeal all errors below may be corrected: jurisdictional, procedural, and substantive; and judgments below may be modified, reversed, remanded with directions, or affirmed. But in common law certiorari, the review is supposed to be strictly limited. It comprehends only (1) jurisdiction below, and (2) the regularity of the procedure followed below. It does not afford complete review of the litigation nor does it extend to the correctness of rulings of inferior courts on substantive law. The Supreme Court has so stated time and again. More explicitly, it has said that if the lower court had jurisdiction and ‘proceeded’ in conformity to law, the inquiry on certiorari is at an end, and the writ will be quashed. It has restated the rule in other words, namely, that on certiorari the subject matter of the suit in the lower court will not be reinvestigated, tried or determined on the merits.
“If a litigant has no right of appeal as such, he is not supposed to get the equivalent when his remedy is limited to certiorari. The Court has advanced a reason why the scope of inquiry on certiorari should be limited, as compared to appeal, and why it should not be extended so as to serve the same purpose as appeal. That reason is that if, in cases originating in courts inferior to the circuit courts, another appeal from the circuit court is afforded in the guise of certiorari, then a litigant will have two appeals from the court of lesser jurisdiction, and yet be limited to only one appeal in cases originating in the court of greater jurisdiction. The writ does not issue to give an aggrieved party a second appeal. Another and more important reason for this proposition is that the Constitution of Florida gives the circuit courts final appellate jurisdiction of most cases originating in inferior courts; and if the Supreme Court gives what amounts to a second appeal, by means of certiorari, it is not complying with the Constitution, but is rather taking unto itself the circuit courts’ final appellate jurisdiction, conferred upon them by the Constitution, and depriving litigants of final judgments there obtained.”
In the case of Tropical Park Inc. v. Ratliff, Fla.1957, 97 So.2d 169, at page 174, where the Supreme Court had before it proceedings on. petition for writ of certiorari to the State Racing Commission, Mr. Justice Hobson, in a special concurring opinion said:
“Respondents contend that Tropical Park, Inc., has not demonstrated its rights to the issuance of a writ of certiorari because it has failed to establish that respondents did not adhere to the essential requirements of the law in conducting the administrative hearing in this case and in reaching their decision revoking the license of the petitioner. However, respondents admit that certiorari ‘is the correct remedy to review the action of an administrative agency or board exercising quasi-judicial functions; Neivert v. Evans, Fla., 82 So.2d 599, and that in certiorari proceedings to re *63 view an order of an administrative body the court may inspect the record of the proceedings before the administrative body to ascertain whether that body proceeded in accordance with authority conferred on it by the controlling law. The writ of certiorari may not be used to determine the weight of the evidence or the sufficiency of the evidence where there is some evidence supporting the judgment complained of, and the Supreme Court will not examine the evidence to determine whether it is of sufficient probative force to sustain the verdict; Seven Seas v. Buckholtz, 121 Fla. 205, 163 So. 567; City of Jacksonville Beach v. Waybright, 130 Fla. 525, 178 So. 401.’
“The only criticism that we have of respondents’ admission is in connection with the words ‘some evidence’. The true rule is that this court will not, on certiorari, determine the weight of tire evidence or its sufficiency where there is competent, substantial evidence supporting the challenged judgment.”
In this case there is a voluminous record of four large file wallets. Needless to say, any summary of facts in this opinion would be tediously long and involved. The evidence necessarily covers a wide range of testimony from lay witnesses and expert witnesses including a Colonel Herbert C. Gee, a consulting engineer with specialized experience in coastal engineering, who testified :
“ * * * The area of land to be filled, some 500 acres is very small when compared with the total area of influence of this inlet which I estimate somewhere around 30 square miles. Now that reduction in the tidal prism would be offset by the improvements in the channels of flow which go along the west boundary in the case of the Intracoastal Waterway, the south boundary in the case of Maximo channel. I think it will be made easier for a large quantity of water to enter the area and flow from the area in a given tidal cycle.”
Walter H. Bennett, a resident of the area, testified as follows:
“Q. From your knowledge of this plan could you state what you feel the effect of this plan will be on the general overall area in and around Boca Ciega Bay? A. Well, I believe this plan is part of a process of the growth of our area. We are taking a thing that at extreme low tide is a mud flat, and we are creating living room of fine residences, a thing that in the future will have fine lawns, waving palm trees. It will be a thing of beauty. We are taking the uplands, there are mangrove swamps, mosquito infested and breeding mangrove swamps. That situation will be cleared up. The type of building we will have on there when fully developed will be taxable perhaps to the extent of a million and a half. It will create a cash flow, a spendable income in this area of millions of dollars. It will benefit all of us. It will take an area that now is a navigational hazard and make a thing of beauty out of it. It will make deep water channels, that will circulate fresh, pure water from the Gulf of Mexico, where a poor old oyster can’t live without being diseased. It will help Gulfport immensely. It will create a living area * * * »
From the testimony of petitioners, there appears to have been violent opposition to the fill ranging from residents who object to any filling as marring the loveliness of the beautiful beaches and waters of Pinel-las County to those who see in the fill possible hurricane damage to those who might live in homes built on the fill after the same is created.
Testimony alone involved some 600 pages, including hundreds of letters, tele *64 grams and exhibits and, though unnecessary for us to review in detail the evidence on certiorari, we have gone through the entire file in this case and reached the conclusion that there was sufficient competent evidence upon which the examiner could base his findings and recommendations; that the full Authority duly considered and passed on the examiner’s recommendation that a permit be issued under the Act; and that the Circuit Judge, sitting in his appellate capacity, did not commit error in his review and affirmance of the Authority’s actions.
We therefore deny the petition for certi-orari.
KANNER, C. J., concurs and PARKS, L. L., Associate Judge, concurs in part and dissents in part.