ALLEN, Chief Judge.
A petition for certiorari to the District Court of Appeal, Second District, was filed in the Supreme Court the 4th of June, 1959, on behalf of the appellants. The petition sought to have the Supreme Court review the decision of the Court of Appeal contained in an opinion dated February 25, 1959, 110 So.2d 55. The basis for the petition was that the majority of the Court of Appeal held that the circuit judge was correct in adopting, the substantial evidence rule in his review of the actions of the fill Authority in granting a permit in this case. It was contended in their brief that the decision of this court conflicted with other decisions of the Supreme Court of Florida.
The Supreme Court, on the 8th day of July, 1959, State v. Furen, 114 So.2d 4, denied certiorari. This case then took on an unusual course by the perfection of an appeal to the Supreme Court in this same case, the assignment of error being that the Court of Appeal erred in initially .construing as a controlling provision of the Florida Constitution that the court did not have authority to entertain an appeal and that it would treat the appeal as a petition for certiorari.
A review of the briefs of both parties filed in the Supreme Court in the above appeal shows that the only question assigned and argued was whether this court erred in treating the appeal as a petition for certiorari.
The Pinellas County Water and Navigation Control Authority was created by Chapter 31182, Special Acts, Laws of Florida, 1955. The Authority was authorized to regulate and exercise control over the dredging and filling of all submerged bottom lands, in the waters of Pinellas County, together with all islands, sandbars, swamp and overflow lands and other sovereignty lands.
The County Authority is composed of the members of the Board of County Commissioners of Pinellas County.
*53 Section 8 of the Act provided that any person desiring to do any dredging, pumping, filling, extension of lands, construction of islands in, or under said navigable waters, shall make an application to the County Authority for a permit to he granted to such person to do the acts authorized.
Section 8(e) of Chapter 31182, Laws of Florida, Special Acts, 1955, provides:
“That the Pinellas County Water and Navigation Control Authority, in order to prevent undesirable situations which might result from the promiscuous and uncontrolled filling of bottom land or the excavating of basins or channels without regard to what might result therefrom, shall obtain such engineering or other data and hear such testimony under oath as may be necessary to determine.
“1. The effect of the proposed plan or development on the use of said waters in said county for transportation and recreational or other public purposes and public conveniences.
“2. The effect of the proposed plan or development on the free use of the waterways and navigable waters.
“3. The effect of the proposed plan or development upon erosion control.
“4. The effect of the proposed plan or development upon the flow of water or tidal currents in said county.
“5. The effect of the proposed plan or development upon erosion, shoaling of channels, formation of stagnant pockets likely to collect debris and upon extraordinary storm damage.
“6. The effect of the proposed plan or development upon the natural beauty and recreational advantages of Pinel-las county.
“7. The effect of the proposed plan or development upon the conservation of wild life, marine life, and other natural resources.
“8. The effect of the proposed plan or development upon the uplands surrounding or necessarily affected by said plan or development.
“The Board, after public hearing, from said data and testimony, shall make findings of fact and determine whether or not the proposed plan or development will materially affect any of the rights and interests of the public heretofore set out in this section. Said findings of fact and said determination shall be reduced to writing and shall be filed with the Clerk of the Board and, when so filed, shall be open to the public. The Board shall, if it desires, or at the request of any applicant or any objector cause the testimony taken at the public hearing to be reported and transcribed, which testimony together with all engineering and other data considered by the Board shall be filed with the Clerk of the Board and, when so filed, the same shall be open to the public; provided, however, that the Board may require the person or persons requesting the reporting of said testimony to post with the Board sufficient moneys to pay the costs of reporting and transcribing the same.
“If the Authority shall find that the proposed plan or development will not materially affect adversely any of the rights and interests of the public heretofore set out in this section, said Authority shall then grant and issue a permit for said proposed plan or development of any modification thereof according to the provisions of this act as hereinafter provided.
“If the Authority shall find that the said proposed plan or development will materially affect adversely any of the rights or interests of the public heretofore set out in this section, the said Authority shall deny the application and refuse to issue a permit for the proposed plan or development.
*54 “Said permit, if granted, shall not be effective until thirty (30) days after the filing of the determination with the Clerk and, if petition for rehearing is filed, until said petition is heard and determined.
“Any person, firm or corporation, including the state of Florida, Pinellas county, and any municipal corporation in said county, in the event they are aggrieved by the findings of fact and determination of the Board, may within thirty (30) days of such findings and determination, petition for rehearing, stating in their petition the grounds upon which the governing authority has erred in its findings and wherein they are aggrieved by said findings. The governing authority may, in its discretion, grant or deny such rehearing.
“Any person, firm or corporation, including the state of Florida, Pinellas county and any municipal corporation in said county, who is aggrieved by the Board’s ruling on the petition for rehearing shall have the right to have the entire cause reviewed by the Circuit Court of the Sixth Judicial Circuit of Florida in and for Pinellas county as provided by law for other appeals to the Circuit Court.” (Emphasis added.)
Section 9 of Chapter 31182, Laws of Florida, Special Acts, 1955, provides:
“The Board may, if it deems it necessary, employ an examiner or examiners who shall conduct such of the public hearings provided for by Sections 8 and 11 of this act as may be referred to said examiner or examiners by the Board.
“(a) The Board may enter an order referring the hearing to an examiner, which order shall be filed by the Clerk of the Board and become a part of the records of said Board.
“(b) The examiner shall regulate all of the proceedings in every hearing before him, upon every reference; and he shall have full authority to examine the proponent, the objectors and all witnesses, upon oath, touching all material matters relative to the application and also to direct the mode in which the matters requiring evidence shall be proved before him, and generally to do other acts, and direct all other inquiries and proceedings in the matter before him which he may deem necessary and proper to the justice and merits thereof and the rights of the parties. The examiner shall also administer the oath to all witnesses testifying before him.
“(c) The evidence in all examinations before the examiner shall be taken down in writing by the examiner or by some other person, by his authority, in his presence and filed with his report.
"(d) The examiner shall forthwith, after the public hearing, make his report to the Board. Said report shall be in writing and shall make findings of fact and recommendations as to the determination of the application, and attached to said report and made a part thereof shall be all testimony taken at said public hearing, together with all engineering and other data considered by the examiner in making-his recommendations.
“(e) Said report shall be filed with-the Clerk of the Board and the Clerk-of- the Board shall notify by registered! mail all of the persons, firms or corporations entitled under Section 8(d)-of this act to notice of the hearing that-said report has been filed. Any person, firm or corporation, including the state-of Florida, Pinellas county and any municipality within said county, in the-event they are aggrieved by the findings of fact and recommendations of' the examiner, may, within thirty (30)-> *55 •days of the mailing of the notice of the filing of said report, file exceptions to said report, which exceptions shall .specify wherein they are aggrieved and wherein the report and recommend-ations are erroneous. If no exceptions are filed within the said time as above provided, the report shall be confirmed •by order of the Board. If exceptions •are filed, they shall stand for hearing before the Board and notice of said hearing, in writing by the Clerk, shall be given to those persons entitled under the terms of this act to notice of the filing of the examiner’s report.
“(f) At the hearing, before the Hoard, of exceptions to the examiner’s report, the Board shall consider the ■exceptions to the examiner’s report and the record of testimony taken before the examiner, without presumptions as to the examiner’s findings of fact, the engineering and other data, ■and shall either confirm the examiner’s report or enter such other determination in the matter as is proper; said order shall be filed with the Clerk of the Board and shall be open to the public. After the entry of said order, the procedure for rehearing before the Board and review by the Circuit Court shall be the same as heretofore provided where the Board originally hears the testimony.
“(g) The compensation of the examiner and of all other persons necessary to conduct said hearings, including a reporter, shall be paid by the Board.” (Emphasis added.)
A St. Petersburg attorney, pursuant to the provisions of the Act, took the testimony of the parties and on March 4, 1957, filed his report and finding’s. Included is the following findings of fact:
“From the testimony given and the evidence introduced at said hearings, I find the following:
“1. The proposed plan or development will not materially adversely affect the use of the waters involved for transportation and recreation, or other public purposes and public conveniences.
“2. The proposed plan or development will have no material adverse effect upon the free use of the waterways and navigable waters in Boca Ciega Bay.
“3. The proposed plan or development will have no material adverse effect on erosion control in Boca Ciega Bay.
“4. The proposed plan or development will have no material adverse effect upon the flow of water or tidal currents in Pinellas County.
“5. The proposed plan or development will not materially adversely affect erosion, shoaling of channels, formation of stagnant pockets likely to collect debris and extraordinary storm damage.
“6. The proposed plan or development will not materially adversely affect the natural beauty and recreational advantages of Pinellas County.
“7. The proposed plan or development will not materially adversely affect the conservation of wild life, marine life and other natural resources.
“8. The proposed plan or development will not materially adversely affect the uplands surrounding or necessarily affected by said plan or development.
******
“I recommend that the application here under consideration be granted.”
Subsequently exceptions were filed to the examiner’s report and, after hearing, the County Authority overruled the exceptions stating:
“This Authority has considered said exceptions to the examiner’s report and *56 the record of the testimony taken before the examiner without presumptions as to the examiner’s finding of fact, the engineering and other data, and finds that the plan or development proposed in said application will not affect adversely any of the rights of the public set out in Section 8 of Chapter 31182, Laws of Florida, Special Acts of 1955.”
The Authority confirmed in all respects the findings of fact made by the examiner in his report and adopted the said findings as the findings of the Authority.
A petition for rehearing duly filed was overruled by the Authority and an appeal was taken to the Circuit Court. The Circuit Court affirmed the decision of the Authority stating:
“The court has carefully inspected the testimony, the exhibits, the briefs of respective counsel, and has carefully listened to and considered the arguments of respective counsel. In each instance of a finding of fact by the Board, the court finds that there is substantial evidence supporting such finding; and such examination of the record and consideration of the cause having failed to reveal any abuse of its discretion by the Pinellas County Board, it follows that its action in issuance of the permit under consideration, should be, and the same is hereby affirmed.”
An appeal was taken to the District Court of Appeal, Second District, which treated the appeal as a petition for certiorari. See Alliance for Conservation of Natural Resources in Pinellas County, Florida v. Furen, Fla.App. 1958, 104 So.2d 803. This court subsequently denied certiorari saying:
“Testimony alone involved some 600 pages, including hundreds of letters, telegrams and exhibits and, though unnecessary for us to review in detail the evidence on certiorari, we have gone through the entire file in this case and reached the conclusion that there was sufficient competent evidence upon which the examiner could base his findings and recommendations; that the full Authority duly considered and passed on the examiner’s recommendation that a permit be issued under the Act; and that the Circuit Judge, sitting in his appellate capacity, did not commit error in his review and affirmance of the Authority’s actions.”
See Alliance for Conservation of Natural Resources in Pinellas County, Florida v. Furen, Fla.App.1959, 110 So.2d 55, 63.
As we have heretofore stated, a petition for certiorari was taken from this court on the ground, set up in the petition, that the decision of this court in sustaining the adoption of the substantial evidence rule by the Circuit Judge was in conflict with other decisions of the Florida Supreme Court. This petition was denied by the Supreme Court.
Subsequently, the Supreme Court of Florida handed down its decision on an appeal from this court’s decision in which the single question assigned was that this court erred in holding that the circuit judge sat as an appellate judge instead of a trial judge in his review of the actions of the full Authority in granting the permit in question.
The lower court, in the instant case, in its decision stated:
“In consideration of appeals from actions of an administrative board exercising judicial or quasi-judicial powers there seem to be two well-established rules of law. One of such rules permits, or perhaps requires, the court to, in effect, re-try the case on the record and to enter its findings of fact and judgment of law, without regard to the previous findings of fact or judgment of such board.
“The other rule does not permit the court to make its own findings of fact *57 and judgment applying such findings, but requires the court to inspect the record and if there be substantial evidence supporting the findings of fact by the board, and that the board had not, in the opinion of the court, abused its discretion in reaching its conclusions upon such findings of fact, then the action of the board should be affirmed, otherwise, if its findings be unsupported, or if it be found to have abused its discretion, then the matter should be returned to the board for its further consideration in the light of the findings of the court.
“Appellants have urged that the first rule recited above, applies to the present appeal and should be adopted by this court as the yardstick by which and under which this court will consider such appeal.
“Appellees, however, contend that the second of the rules recited above, should be applied to this appeal and that this court should consider the same in the light thereof.
“The Supreme Court of our state has considered these rules in quite a number of instances and it is found that in appeals from board actions exercising quasi-judicial powers and without the authority of also exercising the boards’ discretion, generally the first rule above stated has been applied, but in instances where the board is authorized to exercise discretion in the application of the facts that it may find and determine, then the latter of the two rules has been generally held to be applicable.”
The Supreme Court of Florida has generally adhered to the substantial evidence rule as will be seen from the cases hereinafter cited.
In City of Pensacola v. Maxwell, Fla. 1950, 49 So.2d 527, 528, the Supreme Court reversed the lower court where the lower court had reweighed evidence adduced before a civil service board instead of determining whether or not there was substantial evidence to justify the findings of the administrative body. In this case the civil service board of Pensacola dismissed Maxwell from the service of the City upon certain grounds. Maxwell sought a review of the ruling by certiorari. In its opinion Justice Sebring, speaking for the Court, said:
“The province of a court in the review of proceedings brought before it by writ of certiorari is well defined: The court may inquire into the jurisdiction of the administrative body whose order is challenged. It may inspect the record of the proceedings before the administrative body to ascertain whether that body has proceeded in accordance with the authority conferred upon it by controlling law. It may examine the record to determine whether there is substantial evidence to justify the finding of the administrative body. It may not reweigh the evidence for the purpose of determining where the preponderance lies, nor substitute its judgment as to the credibility of witnesses for that of the body charged with the duty of determining the facts. [Citations omitted.]”
In Becker v. Merrill, 155 Fla. 379, 20 So. 2d 912, 913, an appeal had been taken from an order quashing the alternative writ in a mandamus proceeding in which the petitioner sought to have an order reinstating him as Chief of Police from which job he had been dismissed by the City Manager of the civil service board of the city. In an opinion by Mr. Justice Thomas the Court said:
“The circuit judge granted a motion to quash the writ because he concluded there was evidence sufficient to sustain charge Number 7 as it was elaborated upon in paragraphs A and B of the bill of particulars to that charge. We shall, therefore, confine our discussion to the misconduct set out in this formal *58 presentation as detailed in these sections of the particulars.
******
“We proceed to the evidence, and shall explore it only to the extent of determining whether there was any substantial evidence to substantiate the charges, refraining from weighing that testimony or comparing it to testimony offered in refutation. Hammond v. Curry, 153 Fla. 245, 14 So.2d 390.
* * * * * *
“Our examination of the record convinces us there was ‘a legal and reasonable exercise of administrative judgment predicated upon required procedure and appropriate evidence’ and that there was no ‘ “abuse of delegated authority or arbitrary or unreasonable action.”’ Nelson v. Lindsey, 151 Fla. 596, 10 So.2d 131, 134. We are constrained to hold that there was evidence, even though controverted, to support the charge of improper conduct of such degree as to be denominated ‘unbecoming.’ ”
Justice Hobson, then a circuit judge, wrote the opinion of the Supreme Court in Nelson v. State ex rel. Quigg, 1945, 156 Fla. 189, 23 So.2d 136. In this case the court said:
“This case had its inception strictly as a judicial proceeding in the Circuit Court of the 11th Judicial Circuit in an action initiated by the filing of an information in quo warranto in the name of the State of Florida on relation of H. Leslie Quigg, relator, and against Charles O. Nelson, respondent. Its true genesis, however, was in a hearing before the City Commission of the City of Miami. This hearing was inaugurated by the City Manager and had as its purpose the determination, as a matter of fact, of whether the charges filed against Quigg, the then Chief of Police of Miami, were true and required Quigg’s removal from office. The City Charter of Miami authorizes such action and prescribes-the procedure to be followed. We find that there was a legally sufficient compliance with statutory requirements in every particular in connection with the hearing before the City Commission. As a result of this full and complete hearing, the City Commission removed Mr. Quigg from the office of Chief of Police. Thereafter Charles O. Nelson was installed as Quigg’s successor. The Circuit Judge in effect reversed the action of the City Commission by the entry of a judgment of ouster against the Respondent Nelson in the quo warranto proceedings.
******
“The question which is determinative of this case on appeal (and it was before the Circuit Court in a proceeding in the nature of an appeal) may be stated in more than one form. We prefer to pose the query in the following verbiage — does a consideration of the record in its entirety disclose the ruling of the City Commission to be sustained by substantial evidence? We have held, and it seems to be an almost universal rule, that the findings of fact made by an administrative board, bureau, or commission, in compliance with law, will not be disturbed on appeal if such findings are sustained by substantial evidence. (Citations omitted.) The underlying and salient reasons for this safe and sane rule need not be repeated here. The fact that it is not the province of an appellate court to try cases de novo on a cold typed transcript is too elementary to require emphasis. This rule finds its counterpart in, if indeed it is not the twin brother of, the rule which requires an appellate court to give great weight to the findings of fact made by a jury or a chancellor and to sustain such findings unless there is no substantial evidence to support them. (Citations omitted.)
*59 “The rule invoked herein is salutary and founded in good common sense and irrefutable logic. It should be adhered to religiously. The advent of the talking moving picture probably has given us a preview of a sound reason for its ultimate abolition. However, until this possible avenue of escape has been made adaptable to, and a requirement in, judicial proceedings, the rule should remain inviolate.
“Upon a careful consideration of the complete record, we find that the ruling of the City Commission is sustained by substantial evidence. It was the failure of the learned Circuit Judge to apply the rule which we invoke herein which caused him to fall into •error. It is not difficult, however, to ■understand how a Circuit Judge, whose daily work is predominantly fact finding in character, might easily overlook this rule.”
Circuit Judge Sandler, in a concurring ■opinion, said:
“I concur in the opinion prepared by Judge Hobson. While this cause originated in the Circuit Court for the Eleventh Judicial Circuit, nevertheless, it brought for review and not for retrial the proceedings before the City ■Commission. It was not the province •of the Circuit Court to retry the case •on the record and substitute its judgment for the judgment of the City Commission, but it was the duty of the ■Circuit Court to review the proceedings to determine if the jurisdictional requirements were complied with and if the judgment of the City Commission found support in the record. That was the question there and is likewise the question here.
* * * * * *
“A careful study of the voluminous record in this case convinces me that not only is there substantial evidence in the record to support the findings' and judgment of the City Commission, but that its judgment is entirely consistent therewith.”
In another City of Miami administrative proceedings, City of Miami v. Huttoe, Fla.1949, 38 So.2d 819, 820, which was a mandamus brought by C. O. Huttoe against the City to compel his reinstatement as a Lieutenant in the Police Department of said city, a peremptory writ was issued and the respondent city appealed. Justice Hobson again wrote the opinion of the Court, saying:
“The first appearance of this case in a duly constituted judicial tribunal was the filing in the Circuit Court of a petition for an alternative writ of mandamus. The matter had its genesis in the suspension order entered by the Chief of Police. The findings of fact were made by the Civil Service Board which was duly authorized to conduct the hearings. Thereafter, the City Manager-Director of Public Safety reviewed the evidence, the findings and the recommendations.
“It is apparent that the members of the Civil Service Board, clothed with authority to make findings and recommendations, heard and observed the witnesses. Therefore, upon review as provided by law, their findings and recommendation appear to call for the invocation of the rule laid down in Hammond v. Curry, supra, and Nelson v. State ex rel. Quigg, supra. The reasons for the rule require its application to the Civil Service Board’s findings and recommendation as we understand those reasons. The primary underlying basis of this principle of law is that those parties, or that person, who have, or has, before them, or him, the witnesses whose demeanor and conduct may be observed are, or is, in a much better position to determine the truth or falsity of the evidence than is the person, or the court, who must make such de *60 termination upon ‘a cold typed transcript'.
“We hold the view that the City Manager-Director of Public Safety should have observed this rule or certainly its quasi counterpart which is the rule to the effect that a Chancellor should give great weight to the findings and recommendations of a Master and follow them unless such findings and recommendations are manifestly against the clear preponderance of the evidence.
“In this case it makes no difference which of these principles should have been invoked by the City Manager-Director of Public Safety for under the guidance of either his determination should have been an approval of the Board’s findings and he should have accepted its recommendations. * * * It is our conclusion that the Circuit Judge was not in error when he issued the peremptory writ because we find substantial evidence in the transcript which sustains the findings and recommendation of the Civil Service Board and that the preponderance of the evidence also ttpholds the Board’s conclusions.
“Moreover, there are numerous decisions of this Court to the effect that the ruling of the lower court will not be disturbed unless it clearly appears that error has been committed. Upon our examination of the entire record we are not convinced that error on the part of the learned Circuit Judge is clearly apparent.
“There was substantial evidence before the Civil Service Board which we believe supports its findings and recommendation and they are likewise sustained by a preponderance of the evidence. The peremptory writ issued in the court below which, in effect, reversed the action of the City Manager-Director of Public Safety, should be and it is hereby upheld.”
Mr. Justice Hobson, in writing the opinion of the Supreme Court of Florida in U. S. Casualty Co. v. Maryland Casualty Co., Fla.1951, 55 So.2d 741, 743, stated:
“It is crystal clear that our burden upon this appeal is to determine for the benefit of the bench and bar, as well as the Florida Industrial Commission, just what weight the full Commission should give to the Deputy Commissioner’s findings of facts when such findings are before said Commission at the time it performs its statutory duty of considering ‘the matter upon the record * * *.’ (Italics supplied.) In considering this matter we should also decide whether under existing statutory law we should adhere to our pronouncement that ‘the probity of the evidence is for the Industrial Commission to determine and their findings should not be reversed unless shown to be clearly erroneous.’ (Italics supplied.) See Sonny Boy’s Fruit Co. v. Compton, Fla., 46 So.2d 17, 18, and cases cited therein.”
The opinion then states that the confusion wrought by the opinions of the Court subsequent to the 1941 amendment was due to the fact that the Court continued to follow its previous decisions, though the statute had been amended, by providing that the full commission should consider upon the record the evidence taken by the Deputy Commissioner and his findings.
In U. S. Casualty Co. v. Maryland Casualty Co., supra, the Deputy Commissioner had found that a claimant’s injury was an aggravation of a prior injury which placed the responsibility for medical expenses upon the defendant, Maryland Casualty Company. Upon appeal to the full commission, the Deputy Commissioner’s findings were affirmed but the Circuit Judge, on appeal, reversed the Commissioner’s order of af-firmance. The Supreme Court held that the evidence sustained the Deputy Commissioner’s findings and reversed the Circuit Judge.
*61 The Supreme Court, in its opinion, stated that under the law as it now exists, the Deputy Commissioner was charged with the duty of not only holding a hearing, and making findings of fact, hut it was also his obligation to enter the compensation order. The Court then further said:
“ * * * Consequently, his position under the law is somewhat analogous to that of a Chancellor, and the full Commission occupies a position which in many ways is similar to that of an appellate court. After the deputy commissioner has held a hearing, made his findings of facts and entered the compensation order and a review is requested, the full Commission should adhere to the findings of fact so made by the deputy commissioner unless there is no competent substantial evidence to sustain them. This is so because of the aforementioned fact that under the law the deputy commissioner is the only person charged with the burden and responsibility of hearing the witnesses and making findings of facts. It is patent that the full Commission functions much in the same manner as does an appellate court, although it is quasi judicial rather than strictly so.”
The Court then stated:
“There is a difference under existing law between the positions of a deputy commissioner and the full Commission, and those of a special master and a chancellor. The chancellor, of course, should give due consideration to the findings of facts made by a special master and should consider the many advantages which the master had in personally hearing and observing the witnesses. Harmon v. Harmon, Fla., 40 So.2d 209. However, although the Chancellor may use the services of a special master (he is not required to do so) and receive from him his advisory findings and recommendations, the fact remains that it is the Chancellor who under the law is charged with the duty and responsibility of making findings of facts and entering the final decree. * * * ”
The Court further said:
“Evidently in those cases which were decided by this Court subsequent to the 1941 amendments, our attention was not called to the impact of such amendments on our former rule as to the weight to be given by the Circuit Court to the Commission’s findings of facts, that is, that such findings should not be overruled if there was competent substantial evidence to support them. Under the law as it existed prior to 1941 it was the full Commission which was charged with the duty and responsibility of making findings of facts and of entering its compensation order. Chapter 18413, Laws of Florida 1937. The analogy between the duties and responsibilities of the full Commission, prior to 1941, and those of a chancellor is apparent.
“Under the law as it presently exists, the full Commission, the Circuit Court and this Court must evaluate the evidence upon a consideration of a cold-typewritten transcript which was not the case with the full Commission before the enactment of the 1941 amendments for it, under the original law, and the same right that a chancellor has consistently possessed to call in the witnesses or additional witnesses, and conduct a hearing de novo. Moreover, it was required to use the services, of a deputy commissioner. The reasons which gave rise to the rule, that this Court should not substitute its judgment for that of the chancellor or jury and reverse the findings of facts, made by either unless there is no competent, substantial evidence which sustains them, exist whenever any person or group of persons may be clothed with authority to hear testimony and *62 charged by law with the duty of deciding questions of fact.
"Any fact-finding individual, group or board created as such by lawful authority is at least acting in a quasi-judicial capacity and as such fact-finding arbiter his, or its, findings are entitled to great weight and should not be reversed unless there is no competent, substantial evidence which supports such findings. See Nelson v. State ex rel. Quigg, 156 Fla. 189, 23 So.2d 136. In connection with this principle it is not at all significant that *a case’ as contemplated in and by our Constitution does not come into existence until the award reaches the Circuit Court for review. See South Atlantic S. S. Co. of Delaware v. Tutsan et al., 139 Fla. 405, 190 So. 675. Such fact does not destroy the reasons for the rule. However, as we have frequently held, the ruling of the full Commission does not reach the Circuit Court with a presumption of correctness, Florida Forest and Park Service v. Strickland, 154 Fla. 472, 18 So.2d 251, as is true when ‘a case’' is before this Court on appeal, but the Commission’s judgment upon review of the Deputy Commissioner’s findings and award should be tested by the Circuit •Court in the manner hereinafter outlined when it is clear that the answer to the question presented depends upon an appraisal of conflicting evidence.
“ * * * The fact-finding arbiter is •usually in a better position than the reviewing body to judge the ability, experience and reputation of the various iso-called expert witnesses who appear personally before him and to determine the weight which should be given their testimony. * * * We are of the opinion the ‘substantial evidence’ rule should be invoked in all cases. Even •in cases which must be resolved upon a true appraisal of testimony of medical •experts, the deputy commissioner’s findings of facts should be upheld unless there is no competent, substantial evidence, which accords with logic and reason, to sustain them.
“It is our view that under existing law the full Commission when reviewing a matter which has been heard by a deputy commissioner should give to his findings of facts about the same weight that this Court is required to give to the findings of facts made by a Chancellor, and the full Commission should not reverse the findings of facts made by a deputy commissioner unless it is made to appear that those findings of facts are not sustained by competent, substantial evidence.
“Upon appeal to the Circuit Court that tribunal should bear in mind the last stated rule in determining whether the order of the Commission should be affirmed, reversed or altered, or the cause remanded to the Commission for further proceedings, but said Court is not now to be guided by the rule that .it should not reverse the findings of the Florida Industrial Commission unless there is no competent, substantial evidence to support them. It is the duty of the Circuit Court to determine whether the full Commission observed the ‘substantial evidence’ rule when the deputy commissioner’s findings and compensation order were before said Commission for review as provided by statute, our former adjudications rendered after the 1941 amendments of Sections 440.25 and 440.27, Florida Statutes, F.S.A., to the contrary notwithstanding.
“Applying the rule pronounced herein to the situation which confronts us in the instant case, we are constrained to hold that the Circuit Court did not determine whether the full Commission observed the ‘substantial evidence’ rule with the result that the findings of facts made by the Deputy Commissioner and affirmed by the full Commission were, reversed by said Court upon a *63 consideration only of the ‘cold typewritten’ record which contains conflicting evidence. We find in the record competent, substantial evidence which supports the findings of facts made by the Deputy Commissioner. Consequently, our judgment must be one of reversal.” (Emphasis added.)
It is stated in 4 Davis, Administrative Law Treatise, § 29.11, Scope of Review of Evidence, page 186:
“Nearly all judicial review of evidence in the federal courts and most of it in the state courts is governed by the substantial-evidence rule. This means that the reviewing court’s inquiry is whether on the record the agency could reasonably make the finding. Substantial evidence is ‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’ The record must afford ‘a substantial basis of fact from which the fact in issue can be reasonably inferred.’ That the test remains somewhat vague, rather than precise, is probably a merit. Variations in intensity of review from court to court and from case to case are considerable.
“The scope of review of administrative findings and of jury verdicts is the same, but the scope of review of judge-made findings is broader, for it is governed by the ‘clearly erroneous’ test; findings may be clearly erroneous without being unreasonable. The difference between the two tests is slight, but a number of political battles have been waged over it.”
The same authority under § 16.09 states:
“When a reviewing court determines that the applicable law is different from what the agency has supposed it to be, and when the agency’s findings have been based upon the agency’s erroneous view of the law, the court often has no choice but to send the case back for administrative findings necessitated by the court’s holding on the question of substantive law. If the court itself were to make the requisite findings, it would he usurping administrative power. Some of the most important cases involving the law of findings are of this character.” (Emphasis added.)
In its decision rendered the 5th of February, 1960, on the appeal, the Supreme Court, 118 So.2d 6, 12, in the last paragraph of the opinion, said:
“It is accordingly our judgment that this court has jurisdiction of the cause and that in adjudicating the order of the County Authority granting the permit to fill lands in Boca Ciega Bay the Circuit Court sat as a trial court. Since we reach this conclusion, we think it appropriate to certify or return the cause to the District Court of Appeal to reevaluate the issues presented as if they had been presented by appeal instead of by certiorari and enter such judgment as to them may seem meet and proper in the light of what has been said in this opinion.”
There is nothing in the mandate that added anything to the opinion as far as directing the actions of this court. On the return of the mandate the appellants, by motion, requested permission to file additional briefs stating:
“(3) That in order to present properly the issues raised by the appeal additional briefs should be filed directed to such issues, and further oral argument should be permitted.
“(4) That issues were raised by these Appellants in their assignments, of error on .their appeal from the Circuit Court of the Sixth Judicial Circuit, to this Honorable Court in this cause, which, by virtue of its order and. opinion filed August 1, 1958 herein, (App.1958, 104 So.2d 803) these appellants did not present and properly should not have presented to this *64 Honorable Court by briefs or oral argument.”
In the additional brief filed by some of the appellants the following points were specified:
“1. The Circuit Court erred as a matter of law in affirming the decision of the Pinellas County Water and Navigation Control Authority to exclude testimony on and to refuse to consider and take jurisdiction of the question of the fill’s proposed elevation above the water line as shown in the application of appellees, Al. W. Furen and Isobel E. Furen for a dredge-fill permit under Chapter 31182, Laws of Florida, Acts of 1955.
“2. The Circuit Court erred as a matter of law, as set forth in the same appellants’ assignments . of error Nos. 4 and 5, in holding:
“1) That the Trustees of the Internal Improvement Fund, etc. by deed dated December 28, 1954, ‘established the public policy of the State of Florida concerning this particular fill and that such public policy so established is irrevocable so long as the conveyance above referred to remains a valid instrument.’
“2) ‘that the fact of, and public policy of, this particular fill, having been established prior to the enactment of Chapter 31182, Laws of Florida, 1955, such Act provided no field of operation for the Pinellas County Board, excepting reasonable regulatory powers •concerning details of this fill, rather than the discretionary power to permit or prohibit the fill itself.’
“3. The requirements of the special act for the issuance of a permit thereunder were not met, and were not established by procedure conforming to the requirements of essential justice or by substantial evidence.”
The appellants state in their argument, under point 3, that this last question was argued in their reply brief filed under date .of October 24, 1958, on pages 34-40, pages 8-24, page 7, under heading B. Actually, no additional argument or question was stated in the above brief.
The additional brief of the Trustees, etc. states the following question:
“The Circuit Judge erred throughout his consideration of the case in applying his erroneous conclusion of law that the Trustees of the Internal Improvement Fund by their .deed ‘established the public policy of the State of Florida concerning this particular fill’ and this public policy ‘having been established prior to the enactment of Chapter 31182, Laws of Florida 1955, such act provided no field of operation for the Pinellas County Board, excepting reasonable regulatory powers concerning details of this fill, rather than the discretionary power to permit or prohibit the fill itself.’ ”
In their brief, the State quotes from part of the reply brief of one of the appellants in which it was alleged that the County Authority was guilty of highly improper, unreasonable and arbitrary acts, and then says that the majority opinion does not mention this, and that apparently the majority opinion of the District Court of Appeal gave it no consideration, but' that it was considered in the dissenting opinion. On page 13 of the Additional Brief of the State of Florida is this quotation from the Reply Brief:
“The Examiner’s Report on the application by Respondent Furen for a Dredge and Fill Permit was dated and filed with the Clerk of the Authority March 4, 1957. The Minutes of the County Authority, of which certified copies are in the Record, show that the Board of the County Authority in a Special Session the following day, March 5, 1957, convened specially to hear, ex parte, and without notice to or. the knowledge of any other interested party to the pending proceedings, an *65 unusual request by Mr. Leonard Bursten, one of the attorneys for applicant Furen in the proceedings. He advised the Board that the Examiner had filed his report recommending that the permit applied for be granted to Mr. Al W. Furen, that the case was now before the full Board, 'and that it had been learned various agencies would file exceptions to his recommendations.’ He further advised the Board that Mr. Furen had entered into an agreement for sale of the project area to Mr. Lee Ratner of Miami, Fla., who would develop same; that in checking it had come to their attention that the Corps of Engineers had held up issuing a permit to Mr. Furen pending approval of the Pinellas County Water and Navigation Control Authority. Then ‘Mr. Bursten requested, based on the fact that there probably would be a further hearing on this matter, that the Board ask the Corps of Engineers to immediately process the pending Furen application for fill in Boca Ciega Bay.’
“The minutes further show that thereupon, on motion of Commissioner Hoerscher, seconded by Commissioner Wick, and carried unanimously, the Clerk of the County Authority was authorized to advise the Corps of Army Engineers that hearing on this matter has been had before the Examiner of the Authority and the Examiner has ruled favorably, ‘that said recommendation is now before the Authority’ and that the Authority request the Corps of Army Engineers to expedite the processing of the Furen application for Army Permit.”
The appellants were correct in stating that the majority opinion did not mention this matter but were incorrect in their conclusion that no consideration was given this question or matter. It was not properly before the appellate court because it was not assigned as an error or as a point of law, nor was it included in the appendix. No question was raised as to the prejudice of the County Authority until one of the reply briefs brought in this additional matter which, in itself, was improper as it could not be a reply to anything brought out in the brief of the appellee.
During the oral argument before this court on this matter one of the attorneys was asked if they had raised this question in the hearing before the County Authority, or on the petition for rehearing, or on the appeal to the Circuit Court, or had they made any assignments of error or points of law involving this question on the numerous appearances before this court, and it was stated, “no,” except appellees’ counsel, if I recall correctly, stated that in one of the appellants’ reply briefs it had been mentioned.
 It is a rule of long standing, and so fundamental that citations are not necessary in support thereof, that on appeal this or any other appellate court will confine itself to a review of those questions, and only those questions, which were before the trial court. Matters not presented to the trial court by the pleadings and evidence will not be considered by this court on appeal. Mariani v. Schleman, Fla.1957, 94 So.2d 829. It is the duty of a party to bring to the attention of the trial court his contentions relating to his claim for relief, and when he fails to do so, he certainly cannot assert that the trial judge was in error for failure to anticipate his desires. Wood v. Wilson, Fla.1955, 84 So.2d 32. An appellate court should confine the parties to the points raised and determined in the court below and briefed in the assignment of errors except for questions such as jurisdiction or other issues raising obvious fundamental errors. Ewing v. Dupee, Fla.App. 1958, 104 So.2d 672.
Just exactly what the lower court meant by stating that the Internal Improvement Board determined the policy at the time they gave the original deed is not clear but, in any event, we do not think that it has *66 any bearing on this particular matter. One of the appellants’ attorneys, during oral argument, was asked if, under the fill authority act, the evidence adduced by petitioner showed that the proposed fill would not materially affect any of the eight categories mentioned in the act, would the County Authority have the discretion under the act to refuse to grant a permit, and he stated, “no.” Policy actually has nothing to do with this case.
This court, in its opinion, stated that the circuit court was in error in regard to an “established policy,” but we did not find that'an erroneous statement of law affected the validity of the lower court’s decree.
The circuit judge, in his decision, stated that the Trustees of the Internal Improvement Fund conveyed to the appellees certain bottom lands and included in the conveyance certain requirements relative to the filling of the lands and appended thereto, and as a part thereof, a drawing substantially in accordance with the application for a permit to fill, and the permit subsequently issued and here under consideration. The court then stated:
“It is the opinion of this court that the Trustees of the Internal Improvement Fund of the State of Florida, by such instrument and such conveyance, established the public policy of the State of Florida concerning this particular fill and that such public policy so established, is irrevocable so long as the conveyance above referred to remains a valid instrument. It is noted that the validity of such conveyance by the Trustees of the Internal Improvement Fund of the State of Florida has not been questioned or attacked in this proceeding, and the same is therefore assumed to be a valid and existing conveyance.
“It is this court’s further opinion, that the fact of, and public policy of, this particular fill, having been established prior to the enactment of Chapter 31182, Laws of Florida 1955, such act provided no field of operation for the Pinellas County Board, excepting reasonable regulatory powers concerning details of this fill, rather than the discretionary power to permit or prohibit the fill itself.
“Appellees made application for a fill permit pursuant to the terms of this act; the Board used a special examiner or master as permitted thereby, who received and heard a voluminous amount of testimony, accompanied by a large number of exhibits, and thereafter filed the same with the Board, together with a recommendation that the application be granted.
“The Board thereupon, pursuant to the terms of such act, received and heard exceptions to the examiner’s findings, overruled the same and issued the permit. From this action this appeal was taken.”
It actually made no difference whether the “policy” of filling in the bays of Pinellas County was established by deeds to sovereignty lands issued by the Trustees of Internal Improvement Fund or whether the County Authority had the right under the Act to determine a “policy.” The fact remains that this is improper and the question involved in the issuance of a permit was whether or not the appellees established to the satisfaction of the County Authority that they were entitled to a permit under the Act in question. We find no authority in the Act itself that permits a discretion to rest with the fill Authority for the issuance of a permit where the evidence shows a compliance with the terms of the Act.
Just as we reviewed the evidence in the certiorari hearing (104 So.2d 803), we have again done so and conclude as did the circuit judge in his review that there was substantial evidence to sustain the County Authority in granting the permit to the appellees. There appears a tremendous amount of testimony and exhibits in the *67 files of this case. The Authority act (Chapter 31182, Special Acts, 1955) provides:
“If the Authority shall find that the proposed plan or development' will hot materially affect adversely any of the rights and interests of the public heretofore set out in this section, said Authority shall then grant and issue a permit for said proposed plan on development or any modification thereof according to the provisions of this act as hereinafter provided.”
The act sets out eight categories from which there must be determined from the evidence that such plan or fill “will not materially affect adversely any of the rights and interests of the public.”
The examiner, an able attorney who took the evidence, determined that the public interests and rights would not be adversely affected in any of the eight fields, and recommended the permit. The County Authority considered the record as made “without presumption” and determined likewise on the facts. The circuit judge, from a study of the record, affirmed the County Authority in the issuance of the permit. We shall affirm the lower court as we do not find any error of law that would justify a reversal of the lower court.
Affirmed.
KANNER, J., concurs.
PARKS, L. L. Associate Judge, dissents.